DAVID NAUGHTON *v.* ALAN HAGER
(10551)

O'CONNELL, HEIMAN and ARONSON, Js.

Argued June 3—decision released September 15, 1992

*Steven W. Varney*, with whom, on the brief, was *Edward N. Lerner*, for the appellant (defendant).

*Michael P. Foley, Jr.*, for the appellee (plaintiff).

O'CONNELL, J. The defendant appeals from the $80,000 judgment rendered against him after a jury trial. He claims that the trial court improperly (1) failed to set aside the verdict on the breach of contract, fraudulent misrepresentation and negligent misrepresentation counts, (2) failed to find that the jury verdict was excessive, (3) denied the defendant's motion for mistrial at the conclusion of the opening statements, and (4) charged the jury concerning evidence of prior complaints against him. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The plaintiff is the owner of a typographic and graphic arts business. The defendant is a coin dealer, author and expert on the value and grading of coins. On March 9, 1984, the parties entered into a written agreement whereby the plaintiff agreed to provide typographic services for a book the defendant was writing on the grading of coins, in exchange for credits in Barter Systems International (BSI) and a large number of valuable coins.

On March 27, 1984, the defendant delivered nineteen silver dollars to the plaintiff. The defendant represented that, based on their grade, their value was $10,030. On October 16, 1984, the parties entered into another written agreement whereby they agreed that the defendant owed a balance of $51,783.75 for the typographic services. Of that amount, $42,803 was to be paid in rare coins and $9000 in barter credits with BSI. Prior to the execution of this agreement, the defendant represented that he was an expert on the valuation of coins, including those involved in the transaction.

On the day the contract was executed, the defendant transferred the specified rare coins and barter credits to the plaintiff. The plaintiff had no prior experience with rare coins and testified that he relied solely on the expertise of the defendant in accepting the coins in exchange for his typographic services. Subsequently, in the course of attempting to obtain the barter credits, the plaintiff discovered that the defendant's account actually contained several hundred dollars fewer credits than reflected in the contract. While the parties attempted to resolve the discrepancy, BSI went out of business.

In 1985, the plaintiff put twelve of the coins up for auction with a New York coin dealer, Harmer Rooke Numismatists. Only four of the twelve were sold and three of those were sold at prices substantially less than the value as represented by the defendant. The plaintiff became suspicious that the coins were not as represented by the defendant and submitted them to another expert for grading and valuation. This expert confirmed that the defendant had grossly misrepresented the grading and values of the coins resulting in a substantial loss of appreciation.

The plaintiff brought this action alleging breach of contract, fraud, negligent misrepresentation and unjust

enrichment. The case proceeded to trial in October, 1990, and resulted in a plaintiff's verdict, including exemplary damages, in the amount of $80,000. The defendant's motions to set aside the verdict and for judgment notwithstanding the verdict were denied. This appeal followed. We affirm the judgment of the trial court.

Additional facts pertaining to individual issues are included in the following discussion.

I

The defendant first claims that the verdict was contrary to the evidence as to the second, third and fourth counts and, therefore, the trial court improperly failed to set aside the verdict on these counts. We disagree.

The second count alleges that the defendant breached the contract by grossly overgrading the coins which were worth considerably less than represented by the defendant. The third count alleges that the defendant falsely represented the grading of the coins. The fourth count alleges that the defendant negligently misrepresented the grading of the coins.

Our role in reviewing an appeal based on the sufficiency of the evidence is well defined. "Where the claim is that the evidence produced did not satisfy the burden of proof factually, the duty of an appellate court is well established. An appeal based on the sufficiency of evidence to support a factual finding carries a legal and practical restriction to review. The function of an appellate court is to review, and not to retry, the proceedings of the trial court. . . . Further, we are authorized to reverse or modify the decision of the trial court only if we determine that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that its decision is otherwise erroneous in law. . . . It is, however, not our function to retry the case or to pass upon the credibility of witnesses."

(Citations omitted; internal quotation marks omitted.) *Kelman* v. *McDonald,* 24 Conn. App. 398, 400–401, 588 A.2d 667 (1991).

Conflicting evidence was introduced by each side, including the testimony of experts on the grading and valuation of coins. The plaintiff's expert testified that none of the coins that he examined was of the grade represented by the defendant. The defendant's expert testified that the coins that were given to the plaintiff by the defendant were in the top 10 percent of what one could expect to receive in the grade represented by the defendant.

It is axiomatic that, "the trier [of fact] is the final judge of the credibility of witnesses and of the weight to be accorded their testimony." (Internal quotation marks omitted.) *Lafayette Bank & Trust Co.* v. *Szent-kuti,* 27 Conn. App. 15, 18, 603 A.2d 1215, cert. denied, 222 Conn. 901, 606 A.2d 1327 (1992). Stated simply, the jury believed the plaintiff's evidence, including the plaintiff's expert, and not the defendant's evidence and expert. Interrogatories submitted to the jury disclosed that it found facts consistent with its verdict.[1]

---

[1] The interrogatories to the jury and their answers are as follows:

"Interrogatory No. 1.

Do you find that the plaintiff substantially performed all the work called for by the contract of October 16, 1984 including alterations and additions specified by the defendant?

Answer: Yes.

Interrogatory No. 2.

Do you find the defendant Alan Hager failed to transfer certain barter credits in the amount of $9,000 to the plaintiff pursuant to the terms of their agreement dated October 16, 1984?

Answer: Yes.

Interrogatory No. 3.

If your answer to Interrogatory No. 2 is yes, do you find that the defendant Alan Hager, offered to transfer $8,000 in barter credits to the plaintiff in lieu of the $9,000 in such credits specified in the contract?

Answer: No.

Interrogatory No. 4.

If your answer to Interrogatory No. 3 is yes, do you find that Naughton was under no duty to accept the $8,000 because it would have unreasona-

Accordingly, we conclude that the trial court properly refused to set aside the verdict on the second, third and fourth counts of the complaint.

## II

The defendant next complains that the $80,000 verdict was excessive. The plaintiff, however, introduced evidence that reasonably could have supported a verdict as large as $135,561.

It is a well settled principle that the "[a]ssessment of damages is peculiarly within the province of the jury

---

bly required the plaintiff Naughton to disregard his own interests or place those of the defendant over his own or sacrifice a substantial right he had?

Interrogatory No. 5.

If your answer to Interrogatory No. 4 is no, do you find that the plaintiff had an opportunity to use $8,000 (Eight Thousand and 00/100) Dollars in barter credits but failed to use them or was prevented from using them because the barter agency went out of business?

Interrogatory No. 6.

Do you find that defendant Alan Hager breached the contract between the parties by transferring overgraded coins whose verifiable wholesale value was less than 20 percent of retail value?

Answer: Yes.

Interrogatory No. 7.

Do you find that the defendant Alan Hager knowingly falsely represented the grading and wholesale value of coins he transferred to David Naughton as higher than 19 percent of retail value, when that was untrue, and that he did so to induce Naughton to act on it and that he did so to his financial loss?

Answer: Yes.

Interrogatory No. 8.

Do you find that defendant Hager in the course of his coin dealer business supplied false grading and valuation information regarding the coins delivered to Naughton for Naughton's guidance and that he failed to exercise reasonable care or competence in obtaining or supplying the information to Naughton for the purpose of inducing action on it, and that plaintiff Naughton did so act to his financial loss?

Answer: Yes.

Interrogatory No. 9.

If you answered yes to No. 7 and find that defendant respectively committed fraud as to the plaintiff, do you find that plaintiff is entitled to an award for punitive damages, which includes attorney's fees and costs of suit?

Answer: Yes."

and their determination should be set aside only when the verdict is plainly excessive and exorbitant. . . . The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, mistake or corruption. . . . Evidence offered at trial relevant to damages must be reviewed in the light most favorable to sustaining the verdict. . . .'' (Citations omitted; internal quotation marks omitted.) *Wood* v. *Bridgeport*, 216 Conn. 604, 611, 583 A.2d 124 (1990).

In the present case, the trial court denied the defendant's motion to set aside the verdict as excessive. "The trial court's refusal to set aside the verdict is entitled to great weight and every reasonable presumption should be given in favor of its correctness. . . ." (Internal quotation marks omitted.) *Todd* v. *Glines*, 217 Conn. 1, 5, 583 A.2d 1287 (1991). Thus, the court's refusal to set the verdict aside is a significant factor in determining whether the verdict was excessive. *Wood* v. *Bridgeport*, supra.

The plaintiff submitted evidence that supported his claimed damages in the amount of $55,807.75[2] on the breach of contract claim. The plaintiff claimed a loss of appreciation. This was supported by the plaintiff's expert's testimony that the value of the coins, at the grade represented by the defendant, would have been $114,395 at the time of trial. The plaintiff then testified that the appreciated value of the coins minus the actual value, as graded by his expert, equaled a total loss of appreciation of $66,160. Further, the plaintiff

---

[2] We note that there were mathematical errors which the plaintiff addresses in his brief. In an effort to reduce the confusion, the amounts referred to in this opinion have been taken from the trial transcript.

sought punitive damages, supported by a bill for attorney's fees and costs, in the amount of $13,953.57. This brought the total claim for damages to approximately $135,561.

In addition to the testimony of the plaintiff and his expert, the plaintiff also submitted the results of the Harmer Rooke auction, coin industry pricing guides, and reports on the value and grading of the coins. Consequently, when viewed in the light most favorable to supporting the verdict, the size of the jury verdict does not "so [shock] the conscience as to compel a reviewing court's conclusion that it was due to partiality, prejudice or mistake." *Martin* v. *Samulis*, 24 Conn. App. 85, 89, 585 A.2d 1255 (1991). Accordingly, we conclude that the trial court did not abuse its discretion in refusing to set aside the verdict.

### III

The defendant next urges us to hold that the trial court improperly denied his motion for mistrial at the conclusion of the opening statements. The defendant's motion was based on comments made by the plaintiff's counsel during his opening remarks. In particular, the defendant claimed that two remarks were especially prejudicial. First, the plaintiff's counsel stated that the defendant had been dismissed from the American Numismatic Association for "failing to respond to a complaint." Second, the plaintiff's counsel referred to the American Numismatic Association as "an organization that apparently oversees coin dealers and people who invest in coins and people who buy coins."[3]

The trial court is vested with broad discretion over the latitude of the statements of counsel during argument. *Yeske* v. *Avon Old Farms School, Inc.*, 1 Conn.

---

[3] The defendant does not elaborate as to how this comment was prejudicial to his case.

App. 195, 205, 470 A.2d 705 (1984); see Practice Book § 296. The "action of the trial court is entitled to weight because of the vantage point from which it can observe and evaluate the circumstances of the trial. The trial court is in a better position to determine the propriety of the remarks of counsel and whether or not they are harmful." *State* v. *Glenn,* 194 Conn. 483, 493, 481 A.2d 741 (1984). When reviewing a trial court's refusal to grant a motion for mistrial, the question before us is "whether the action of the trial court . . . so far exceeded or abused the discretion committed to it . . . as to warrant us in granting a new trial. . . . Our inquiry . . . is to determine whether the defendant was deprived, by the remarks of [opposing counsel], of his constitutional right to a fair trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Richardson,* 214 Conn. 752, 760–61, 574 A.2d 182 (1990).

We reject the defendant's argument for two reasons. First, whatever validity the defendant's claim might otherwise have had was lost when the defendant's counsel made the tactical decision to introduce evidence concerning the prior complaints during direct examination. See *State* v. *Anderson,* 209 Conn. 622, 633, 533 A.2d 509 (1989). Furthermore, this trial tactic resulted in allowing the plaintiff to probe this issue further on cross-examination.

Second, there was abundant evidence to support the jury's verdict. An article from *Barron's,* a national financial weekly publication, was put before the jury, wherein it stated, "Hager openly admits that he 'gouged people' in coins." Further, the defendant, on both direct and on cross-examination, admitted to having several complaints lodged against him. There was also evidence before the jury from which it could logi-

cally be inferred by the jury that such other complaints involved allegations of overgrading and overvaluing coins.

Considering the totality of the circumstances concerning this claim, we conclude that the defendant was afforded a fair trial and, accordingly, we will not disturb the trial court's denial of his motion for a mistrial.

## IV

The defendant next claims that the jury charge pertaining to prior complaints against the defendant was incorrect and rendered the charge unfairly prejudicial to him. The trial court charged that "[t]here has been evidence of alleged prior complaints of overgrading of coins against Mr. Hager. If you credit that evidence, you should consider it in light of all of the other evidence only insofar as you may find it to be evidence of intent in connection with the fraud count . . . or evidence of improper conduct or malice. . . . You should not infer from it that the defendant possessed the propensity for dishonesty generally."

"When reviewing the propriety of a trial court's charge to the jury, we must determine whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Jury instructions do not have to be exhaustive, perfect or technically accurate but they must be correct in law, adapted to the issues and sufficient for the guidance of the jury." (Citations omitted; internal quotation marks omitted.) *Olshefski* v. *Stenner,* 26 Conn. App. 220, 223–24, 599 A.2d 749 (1991). Moreover, "[t]o determine whether an error in the charge to the jury exists, we review the entire charge to determine if, taken as a whole, the charge adequately guided the jury to a correct verdict." (Internal quotation marks omitted.) *State* v. *Hopkins,* 222 Conn. 117, 130, 609 A.2d 236 (1992).

The defendant took exception to the court's "characterization of evidence being adduced by the plaintiff that showed overgrading by the defendant in other circumstances." The defendant argued that there simply was no evidence presented on that point. The record does not support the defendant's contention.

The record is replete with evidence from which a jury could reasonably have concluded that there had been prior complaints of overgrading against the defendant. Indeed, much of the evidence on this point was introduced by the defendant's own counsel or on cross-examination by the plaintiff's counsel without objection. The trial court's charge properly limited the use of that evidence and, also, properly instructed the jurors that they were the sole finders of fact. In the absence of a clear indication to the contrary, juries are presumed to follow the court's instructions. *State* v. *Negron,* 221 Conn. 315, 331, 603 A.2d 1138 (1992).

Accordingly, the court's charge in its entirety presented the case fairly to the jury such that no injustice was done.

The judgment is affirmed.

In this opinion the other judges concurred.