## Connecticut Bank and Trust Company, N.A. *v.* Carol Reckert et al.
## (11897)

Foti, Lavery and Cretella, Js.

Argued November 8, 1993—decision released March 8, 1994

*Susan Webb,* with whom, on the brief, was *Bernard Green,* for the appellant (named defendant, third party plaintiff).

*Michael P. Foley, Jr.,* for the appellee (substitute plaintiff).

*Jeffrey A. Blueweiss,* for the appellee (third party defendant).

LAVERY, J. Carol Reckert, the defendant and third party plaintiff, appeals from the judgment of the trial court granting strict foreclosure for the substitute plaintiff, Fleet Bank, N.A. (Fleet),[1] and from the summary judgment for the third party defendant, John Lackland, on the third party complaint. On appeal, Reckert claims that the trial court improperly (1) rendered judgment of strict foreclosure absent evidence that Fleet in fact held the mortgage being foreclosed, (2) permitted an expert witness to testify in violation of the parties' agreement, and (3) admitted inadmissible hearsay evidence on the value of the mortgage debt. Reckert also claims that the trial court improperly rendered summary judgment in favor of the third party defendant. We reverse the judgment of strict foreclosure, but affirm the summary judgment in part and reverse it in part.

---

[1] Fleet Bank, N.A. was substituted for Connecticut Bank and Trust Company, N.A., pursuant to Practice Book § 99. Fleet did not submit a brief or appendix to this court. We proceeded on the issue of strict foreclosure on the record and Reckert's brief and appendix.

This appeal arises from an action brought by Fleet to foreclose a mortgage securing a home equity loan of $80,000 executed in 1986 between Reckert and the Connecticut Bank and Trust Company (CBT). As security, Reckert mortgaged her property at 1404 Round Hill Road in Fairfield.[2] Reckert executed the note through Lackland, who purported to act under a power of attorney. Reckert impleaded Lackland as a third party defendant, claiming that he had negligently exceeded his authority, breached an oral contract and violated fair trade practices. Lackland counterclaimed that Reckert had defrauded him.

After trial, the court rendered judgment of strict foreclosure. The trial court also granted Lackland's motion for summary judgment on the third party complaint. The counterclaim was not adjudicated. This appeal resulted.

## I

## A

Reckert first argues that the judgment of strict foreclosure was based on evidence insufficient to establish Fleet's ownership of the mortgage. When considering a sufficiency of the evidence claim, our role is clear. "The function of an appellate court is to review, and not to retry, the proceedings of the trial court. . . . Further, we are authorized to reverse or modify the decision of the trial court only if we determine that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that its decision is otherwise erroneous in law. . . ." (Citations omitted; internal quotation marks omitted.) *Naughton v. Hager,* 29 Conn. App. 181, 184–85, 614 A.2d 852, cert. denied, 224 Conn. 920, 618 A.2d 527 (1992). "In

---

[2] A first mortgage held by First Federal Bank in the amount of $264,800 was superior to CBT's mortgage.

a civil case, proof of a material fact by inference from circumstantial evidence need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. . . ." (Citations omitted; internal quotation marks omitted.) *Milano* v. *Sayers,* 6 Conn. App. 491, 497, 506 A.2d 162, cert. denied, 199 Conn. 810, 508 A.2d 771 (1986).

Reckert's mortgage deed listed CBT as the mortgagee. Debora Mitkivicious, a Fleet assistant branch manager, testified that the Federal Deposit Insurance Corporation was CBT's receiver and had sold CBT and all of its assets to Fleet. She also stated that she obtained Reckert's mortgage documents and information from Fleet's office in Hartford. Although Fleet did not submit evidence of an assignment and thereby eliminate every other possibility, the evidence presented permitted the court reasonably to believe in the probability that Fleet owned the mortgage. Therefore, the evidence was sufficient and Reckert's first claim must fail.

## B

Reckert also claims that the trial court abused its discretion by admitting testimony of Fleet's appraiser, Terrence W. Keegan. This testimony was offered despite the parties' stipulation that they would rely solely on an appraisal prepared by Morris Lefsetz. Keegan's testimony, and the court's refusal to grant Reckert a continuance in order to obtain a new expert, severely and unfairly prejudiced Reckert's case.

Both parties admitted to the trial court that they had previously stipulated that they would establish the value of the mortgaged property through the appraisal prepared by Lefsetz, who had recently died. Lefsetz had appraised the property at $450,000. On October 21,

1992, however, Fleet notified Reckert that it was hiring another appraiser to look at the property. On October 22, the night before the trial began, Fleet disclosed to Reckert that it intended to offer Keegan's testimony that the property was worth $330,000.

When the trial began on October 23, Reckert objected to Keegan's testimony on the grounds that it violated the parties' stipulation and Practice Book § 220 (D)[3] regarding disclosure of expert witnesses. The trial court overruled the objection and refused to grant Reckert a continuance in order to hire another appraiser.

"A stipulation is a contract, and, as such, the construction of that contract is controlled by the parties' intent." *Connecticut National Bank* v. *N. E. Owen II, Inc.*, 22 Conn. App. 468, 473–74, 578 A.2d 655 (1990), citing *Albert Mendel & Sons, Inc.* v. *Krough*, 4 Conn. App. 117, 122–23, 492 A.2d 536 (1985). Fleet admits that it agreed with Reckert to establish the value of the property being foreclosed using Lefsetz' appraisal. Reckert relied on that stipulation and did not hire another expert after Lefsetz died.

Fleet's actions coupled with the trial court's denial of Reckert's request for a continuance left Reckert with only a written appraisal to counter Keegan's extensive live testimony. Further, under the parties' stipulation, the sole evidence on the value of the property would

---

[3] Practice Book § 220 (D) provides in pertinent part: "[A]ny plaintiff expecting to call an expert witness at trial shall disclose the name of that expert . . . the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within 60 days from the date the case is claimed to the trial list. . . . If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection, or if an expert witness who is expected to testify is retained or specially employed after that date, such expert shall not testify except in the discretion of the court for good cause shown."

have established a value of $450,000; Keegan's testimony resulted in the court's valuation of the property at $390,000.

Moreover, Fleet failed to satisfy Practice Book § 220 (D). That rule requires plaintiffs to disclose the names of experts expected to testify within sixty days of the claim for trial. Experts not disclosed within that time "shall not testify except in the discretion of the court *for good cause shown.*" (Emphasis added.) Practice Book § 220 (D). "Neither § 220 (D) nor the cases interpreting it define what constitutes 'good cause.' . . ." *Knock* v. *Knock,* 224 Conn. 776, 782–83, 621 A.2d 267 (1993). "In determining whether the trial court has abused its discretion, an appellate court should entertain every reasonable presumption in favor of the trial court's decision." Id., 783.

Fleet claimed this action to the trial list on September 4, 1991. Fleet first disclosed Keegan's expected testimony on October 21, 1992. Thus, in light of the prior understanding, Keegan should not have been permitted to testify absent good cause. Fleet's counsel explained to the court at trial that Keegan was retained because counsel became dissatisfied with the stipulation of the property's value. Despite our duty to entertain every reasonable presumption in favor of the trial court's decision, we cannot agree that changing one's mind is sufficient good cause to violate a rule of practice. See, e.g., id. (new expert necessary to rebut plaintiff's new expert; plaintiff sought no continuance); *Berry* v. *Loiseau,* 223 Conn. 786, 800, 614 A.2d 414 (1992) (new experts testifying on same topic and defendant granted continuance to prepare cross-examination). "The discovery rules . . . are designed to make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent." (Internal quotation marks omitted.) *Knock* v. *Knock,* supra, 782.

Further, "when a party is prejudiced by a failure to disclose in a timely manner, a continuance is ordinarily the proper method to alleviate any prejudice." *Tessmann* v. *Tiger Lee Construction Co.*, 228 Conn. 42, 52, 634 A.2d 870 (1993). Here, Reckert learned that Fleet was abandoning its stipulation only two days before trial. Reckert was deprived of an opportunity to obtain a new appraisal and prepare to cross-examine Keegan. A continuance would have been proper under the circumstances. See id.

Thus, it is clear that Fleet's breach of the stipulation and the trial court's denial of Reckert's request for a continuance unfairly prejudiced Reckert. Keegan should have been excluded, or Reckert should have been permitted time to prepare a new appraisal and to cross-examine Keegan properly.

## C

Reckert next claims that a portion of Mitkivicious' testimony was inadmissible hearsay. Fleet attempted to prove the amount still outstanding on the mortgage through her testimony. She testified that she had called the home equity department of her bank and had been told the balance due by a person whose name she did not remember. Reckert's hearsay objection was overruled.

On review, we will set aside evidentiary rulings only upon a showing of a clear abuse of discretion. *Gemme* v. *Goldberg*, 31 Conn. App. 527, 539, 626 A.2d 318 (1993). An out-of-court statement offered to prove the truth of the matter asserted in the statement is hearsay. *State* v. *Crafts*, 226 Conn. 237, 253, 627 A.2d 877 (1993). Unless subject to an exception, hearsay is inadmissible. *State* v. *Blades*, 225 Conn. 609, 632, 626 A.2d 273 (1993). Mitkivicious' testimony consisted of a repetition of her telephone conversation with an unidenti-

fied person. The statement was made out-of-court and offered to prove the remaining balance. Thus, the statement was hearsay.

Fleet claims that this hearsay was admissible under the business records exception.[4] This argument fails, however, because Fleet never offered a written business record. Fleet orally offered the information purportedly contained in a business record as transmitted by a third person. Thus, Mitkivicious' testimony about what she was told by a third person should have been excluded.

## D

Reckert's final attack on the judgment of strict foreclosure relates to a letter from Fleet to its counsel. Fleet offered the letter as further proof of the balance due on the mortgage. Mitkivicious testified that Fleet's counsel first showed her the letter and that she did not know the author. Reckert's hearsay objection was overruled.

We again state that we will set aside evidentiary rulings only upon a showing of a clear abuse of discretion. *Gemme* v. *Goldberg,* supra. As noted earlier, hearsay is a statement made out of court, offered to prove the truth of the matter asserted. *State* v. *Crafts,* supra. Thus, a letter offered to prove the truth of the matters asserted therein is inadmissible hearsay.

Fleet offered the letter under the business records exception to the hearsay rule. General Statutes § 52-180 permits hearsay evidence to be admitted if

---

[4] General Statutes § 52-180 (a) provides in pertinent part: "Any writing or record . . . made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if . . . it was made in the regular course of any business, and . . . it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter."

(1) this writing was made in the regular course of business, (2) it was the regular course of the business to make such a writing, and (3) the writing was made at the time of the transaction or occurrence or within a reasonable time thereof. *State* v. *Scott,* 31 Conn. App. 660, 665, 626 A.2d 817 (1993). To qualify a document as a business record, the party offering it must present a witness who testifies that these three requirements have been met. *State* v. *Lawler,* 30 Conn. App. 827, 831–32, 622 A.2d 1040 (1993). The trial court has discretion to determine whether the statute is satisfied and appellate courts must construe the statute liberally when reviewing abuse of discretion. *State* v. *Scott,* supra; *State* v. *Lawler,* supra.

Fleet offered the letter through Mitkivicious' testimony. Her testimony, however, failed to satisfy the requirements of General Statutes § 52-180. Although she claimed that the letter resulted from Fleet's ordinary course of business and that it was the ordinary course of business for this author to write such a letter, her own testimony undermined her claim. She admitted that the letter was generated by a department in which she had never worked, that she was not familiar with that department's records and filing system and that she did not know the person who wrote the letter or that person's position. She also stated that she did not know when the letter was written. Thus, the statutory requirements were not fulfilled.

Moreover, the record establishes that this letter was written for the purposes of this litigation. The business record exception recognizes that documents used for business are trustworthy. Those prepared for litigation, however, lack the presumption of trustworthiness. Id., 832. Thus, the letter written to the plaintiff's attorney for this litigation failed to satisfy the requirements

of the business records exception to the hearsay rule. The letter should have been excluded.

## II

Reckert also appeals from the summary judgment rendered on her third party complaint. After Fleet began foreclosure proceedings against Reckert, she impleaded Lackland claiming that he had acted negligently, breached an oral contract, and violated the Connecticut Unfair Trade Practices Act (CUTPA).[5] Lackland responded by special defense that Reckert's claims were barred by the relevant statutes of limitation. Lackland also counterclaimed that Reckert had defrauded him.

On Lackland's motion, the trial court found that Reckert's claims were barred by the statutes of limitation and rendered summary judgment in favor of Lackland. The counterclaim remains unresolved.

### A

Before considering the merits of the claim, we must review whether the appeal is properly before us. The jurisdiction of the appellate courts is restricted to appeals from final judgments. General Statutes §§ 51-197a, 52-263; Practice Book § 4000; *Solomon* v. *Keiser,* 212 Conn. 741, 745–46, 562 A.2d 524 (1989). This rule discourages piecemeal appeals and facilitates the speedy and orderly disposition of cases at the trial court level. *Solomon* v. *Keiser,* supra. We have no authority to address the merits of Reckert's appeal unless it is properly before us at this juncture. *Ackerson* v. *Stramaglia,* 225 Conn. 102, 104, 621 A.2d 1315 (1993).

Practice Book § 4002 provides that summary judgment on an entire complaint constitutes a final judg-

---

[5] General Statutes § 42-110a et seq.

ment.[6] Here, the trial court rendered summary judgment on Reckert's entire third party complaint. Section 4002 deems that judgment final even though Lackland's counterclaim against Reckert remains unresolved. Thus, Reckert's appeal is properly before us. See also *Dunham* v. *Dunham,* 221 Conn. 384, 387, 604 A.2d 347 (1992) (review of appeal of counterclaim where complaint unadjudicated); *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.,* 187 Conn. 544, 546–47, 447 A.2d 406 (1982) (review of appeal of summary judgment on third party complaint where counterclaim unadjudicated); *Zampano* v. *L. G. DeFelice, Inc.,* 30 Conn. App. 801, 801 n.1, 622 A.2d 1022 (1993) (review of appeal from dismissal of third party complaint where complaint unadjudicated).

B

The trial court granted summary judgment in favor of Lackland after finding that Reckert's third party claims were barred by the relevant statutes of limitations. Reckert claims that this judgment was improper because she demonstrated that there were disputed issues that could be resolved only by trial.

"The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary

---

[6] Practice Book § 4002 (c) provides in pertinent part: "When . . . summary judgment pursuant to Sec. 378 has been granted upon an entire complaint, counterclaim or cross complaint, such dismissal or summary judgment shall constitute a final judgment. . . ."

judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ." (Citations omitted; internal quotation marks omitted.) *Scinto* v. *Stamm*, 224 Conn. 524, 530–31, 620 A.2d 99, cert. denied, U.S. , 114 S. Ct. 176, 126 L. Ed. 2d 136 (1993).

Summary judgment was properly rendered on Reckert's negligence and CUTPA claims. First, she failed to demonstrate a genuine issue of material fact. Reckert's complaint stated that both the negligence and CUTPA claims arose from Lackland's conduct on September 29, 1986. Lackland asserted that the statute of limitations began to run on that date. Reckert failed to disclose any evidence of a continuing course of conduct that would have tolled the statute of limitations. Practice Book §§ 380, 381; *Scinto* v. *Stamm*, supra, 530. Therefore, the trial court correctly determined that no genuine issue of material fact existed regarding when the statute of limitations began to run.

Second, Lackland demonstrated that he deserved judgment as a matter of law. The statutes of limitation that apply to the negligence and CUTPA claims require suit to be brought within three years of the conduct or violation. General Statutes § 52-577 (tort claim must be brought within three years of act or omission); General Statutes § 42-110g (f) (allegations of CUTPA violations must be brought within three years of conduct). Thus, Reckert's negligence and CUTPA claims were barred by the applicable statute of limitations, and the trial court properly entered summary judgment in Lackland's favor.

Conversely, the trial court improperly rendered summary judgment on Reckert's contract claim. The trial court ruled that Reckert's contract claim was barred by General Statutes § 52-581, which imposes a three year limitation on actions brought on executory oral contracts. *Tierney* v. *American Urban Corp.*, 170 Conn. 243, 248–49, 365 A.2d 1153 (1976) (§ 52-581 applies only to executory contracts). General Statutes § 52-576, however, imposes a six year limitation on actions brought on all other oral contracts. Id. The court had no evidence before it regarding whether the alleged contract had been fully performed or was executory. Thus, the trial court could not have determined whether § 52-581 or § 52-576 applied to this claim. *Mac's Car City, Inc.* v. *DeNigris,* 18 Conn. App. 525, 530, 531, 559 A.2d 712 (1989). Therefore, summary judgment based on § 52-581 was inappropriate because there was a genuine issue whether that statute applied. Id.

The judgment of strict foreclosure is reversed and the case is remanded for a new trial; summary judgment on the third party claims of negligence and a CUTPA violation is affirmed, summary judgment on the third party contract claim is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.