PIE PLATE, INC., ET AL. *v.* TEXACO, INC.
(11481)
(11483)

O'CONNELL, LAVERY and LANDAU, Js.

Argued April 28—decision released August 2, 1994

*Neil F. Murphy, Jr.,* with whom was *Lawrence J. Kiel,* for the appellant (named plaintiff).

*Francis G. Pennarola,* for the appellant (plaintiff Frank Devino).

*Paul D. Sanson,* with whom, on the brief, were *Gregory T. D'Auria* and *Sheila Huddleston,* for the appellee (defendant).

LAVERY, J. The plaintiffs, Pie Plate, Inc. (Pie Plate), and Frank Devino, appeal from a judgment in favor of the defendant, Texaco, Inc. (Texaco), in their tort action arising out of a gasoline contamination of commercial property in Waterbury. Both plaintiffs assert that the trial court improperly (1) excluded the testimony of an expert witness under Practice Book § 220 (D), and (2) restricted the scope of a witness' testimony. In addition, Pie Plate claims that the trial court improperly (1) limited its attempt to demonstrate an expert witness' bias, (2) refused to instruct the jury on adverse inference and damages as requested, and (3) instructed the jury on the applicable statute of limitations and theory of superseding cause. Frank Devino also asserts that the trial court improperly refused to take judicial notice of Devino's withdrawal of the case he had brought against Merit, Inc. (Merit).

Devino owns commercial property in Waterbury that was contaminated by underground gasoline. Pie Plate operated a restaurant on the premises until forced to close in 1985 by the gasoline contamination. A gasoline station owned by Merit adjoined the property; a Texaco gasoline station was located across the street from the property.

After the contamination, Devino sued Merit alleging damages resulting from negligent discharge of gasoline onto his property. Merit claimed that Texaco was responsible for the contamination. Devino and Pie Plate sued Texaco in 1986 on the same ground. Texaco blamed Merit. After seven years of discovery and motions, the parties presented their cases to a jury during a four week trial. Near the end of the Texaco trial, Devino withdrew his case against Merit. The jury found

that Texaco had been negligent but had not been a sub-
stantial factor in causing the plaintiffs' damages. The
plaintiffs appealed.

I

The plaintiffs' first claim involves the defendant's
pretrial motion to preclude expert testimony by any
witnesses not disclosed pursuant to Practice Book
§ 220 (D).[1] The defendant sought to prevent the plain-
tiffs from calling Dan Buzea as an expert. The trial
court found that Buzea had been retained as an expert
witness by Merit in Devino's case against Merit. The
trial court also found that the plaintiffs had known of
Buzea's availability and his opinion but had failed to
comply with Practice Book § 220 (D). Therefore, the
trial court granted the defendant's motion.

On appeal, the plaintiffs initially assert that Practice
Book § 220 (D) does not apply to expert witnesses called
in rebuttal. This argument is legally incorrect and fac-
tually inapposite. Section 220 (D) applies to rebuttal
expert witnesses. *Roberto* v. *Honeywell, Inc.*, 33 Conn.
App. 619, 624, 637 A.2d 405 (1994). Furthermore, the
trial court ruled on the motion before the trial began
and without knowing that Buzea would be a rebuttal
witness. Thus, even if § 220 (D) did not apply to rebut-
tal witnesses, that fact pattern was not presented to
the trial court.

---

[1] Practice Book § 220 (D) provides in pertinent part: "[A]ny plaintiff
expecting to call an expert witness at trial shall disclose the name of that
expert, the subject matter on which the expert is expected to testify, the
substance of the facts and opinions to which the expert is expected to tes-
tify, and a summary of the grounds for each opinion, to all other parties
within 60 days from the date the case is claimed to a trial list. Each defendant
shall disclose the names of his or her experts in like manner within 120
days from the date the case is claimed to a trial list. If disclosure of the
name of any expert expected to testify at trial is not made in accordance
with this subsection, or if an expert witness who is expected to testify is
retained or specially employed after that date, such expert shall not tes-
tify except in the discretion of the court for good cause shown."

The plaintiffs also assert that the trial court abused its discretion in excluding Buzea. Section 220 (D) provides that if the name of any expert is not disclosed within sixty days of the date the case is claimed to the trial list, the expert shall not testify except in the discretion of the trial court for good cause shown. The rule provides a safety valve by making the determination of whether such an expert testifies a discretionary decision to be made by the trial court in light of good cause. See *Knock* v. *Knock,* 224 Conn. 776, 782, 621 A.2d 267 (1993); *Berry* v. *Loiseau,* 223 Conn. 786, 800, 614 A.2d 414 (1992); *Roberto* v. *Honeywell, Inc.,* supra, 33 Conn. App. 625.

" 'Neither § 220 (D) nor the cases interpreting it define what constitutes "good cause." ' " *Knock* v. *Knock,* supra, 224 Conn. 782–83. "[T]he scope of the trial court's discretion required it to review the intent and the reasons given by the plaintiff for not disclosing [an] expert witness within the time frame set forth in § 220 (D), and to determine if those reasons, particular to this case, amounted to good legal excuse." *Roberto* v. *Honeywell, Inc.,* supra, 33 Conn. App. 626. " 'In determining whether the trial court abused its discretion, an appellate court should entertain every reasonable presumption in favor of the trial court's decision.' " *Connecticut Bank & Trust Co., N.A.* v. *Reckert,* 33 Conn. App. 702, 707, 638 A.2d 44 (1994).

The record reveals that the trial court performed the appropriate review. The trial court found that the plaintiffs had long been aware of a report prepared by Buzea that was favorable to their position and that Buzea had been available as a witness for at least three months. Moreover, the plaintiffs' tardy disclosure meant either that the trial would have to have been further delayed or that the defendant would have been deprived of reasonable time in which to prepare for Buzea's testimony. Because the trial court believed that the plaintiffs had

not presented a reasonable explanation for their failure to comply with the rule, the court granted the motion. Our review of the record persuades us that there was no abuse of discretion.

## II

The plaintiffs next assert that the trial court improperly limited the scope of testimony offered in rebuttal. During the defendant's case-in-chief, one of the defendants experts, Dennis Waslenchuk, relied on a report prepared by Buzea. On rebuttal, the plaintiffs offered Buzea's testimony regarding his report and his opinion regarding the source of the contamination on the basis of the report. The trial court again refused to permit Buzea to testify as an expert. The trial court did, however, grant permission for him to testify to the facts underlying his report. Finally, the trial court denied the plaintiffs permission to have Buzea testify regarding facts that he learned subsequent to the preparation of the report. The plaintiffs chose not to present Buzea at all.

The admission of rebuttal evidence lies within the sound discretion of the trial court. *Shaham* v. *Capparelli,* 219 Conn. 133, 134, 591 A.2d 1269 (1991). " '[T]he usual rule will exclude all evidence which has not been made necessary by the opponent's case in reply.' " Id., 136–37 (*Shea* and *Covello, Js.,* dissenting), quoting 6 J. Wigmore, Evidence (4th Ed.) § 1873, p. 672. "The policy behind restrictions on the presentation of rebuttal testimony is that a plaintiff is not entitled to a second opportunity to present evidence that should reasonably have been presented in [its] case-in-chief." *Shaham* v. *Capparelli,* supra, 136. "The issue on appeal is not whether any one of us, sitting as the trial court, would have permitted the disputed testimony to be introduced. The question is rather whether the trial court . . . abused its discretion in not allow-

ing the rebuttal testimony . . . ." Id., 134; see *Hall* v. *Burns,* 213 Conn. 446, 451, 569 A.2d 10 (1990); *Gemme* v. *Goldberg,* 31 Conn. App. 527, 538, 626 A.2d 318 (1993).

We conclude that the trial court did not abuse its discretion by preventing Buzea from testifying as an expert on rebuttal. The plaintiffs had not disclosed him as a potential expert witness prior to trial. Thus, absent adequate time in which to prepare, the defendant would have been prejudiced. The trial court refused to accommodate the plaintiffs' failure to disclose their experts in a timely manner by prolonging a month long trial that was the culmination of a seven year old case. The plaintiffs were not prejudiced by this ruling because they could have presented Buzea as a fact witness. That would have allowed them to establish the factual predicate for the opinion of their expert, John Raabe, who could have been recalled. Therefore, we conclude that the trial court did not abuse its discretion by refusing to permit the plaintiffs to achieve on rebuttal what had been denied them during their case-in-chief.

The trial court also properly restricted the facts to which Buzea would have been permitted to testify. The defendant's expert used Buzea's report as grounds for his opinion that the contamination was caused by Merit. The plaintiffs' sought to have Buzea testify to facts that were not discovered before the report was prepared, that were not part of the report, and on which the defendant's expert did not rely. Thus, this testimony was not made necessary by the defendant's case. Moreover, the plaintiffs knew of these facts and could have had Buzea testify as a fact witness regarding them during the plaintiffs' case-in-chief. The plaintiffs could then have had Raabe testify as an expert and present his opinion based on those facts. The plaintiffs did neither. The trial court did not abuse its discretion by denying

the plaintiffs a second opportunity to present evidence that should reasonably have been included in its case-in-chief.

Finally, we note that the relevance of these facts is suspect. The contamination underlying this case occurred sometime prior to 1985. The plaintiffs sought to have Buzea testify to tests he performed in late 1991 after his report was completed. The plaintiffs did not demonstrate any objective indicia linking the tests done in 1991 to the source of the contamination six years earlier. We conclude, therefore, that the trial court did not abuse its discretion when it restricted the scope of Buzea's offered testimony.

## III

Pie Plate next claims that the trial court improperly restricted the scope of cross-examination of Waslenchuk regarding possible bias. During his investigation of the contamination, Waslenchuk prepared a report of his findings. Pie Plate hoped to demonstrate that Waslenchuk had altered his report as directed by the defendant's counsel in order to be more favorable to the defendant. On cross-examination, Pie Plate elicited testimony that a draft of Waslenchuk's report was sent to the defendant and counsel. Waslenchuk also testified that he had received a letter from the defendant asking him to consult with counsel on some "literary" changes. Pie Plate entered that letter into evidence. Waslenchuk denied any improper influence and testified that he was unable to recall whether any changes had been made. The report that was the subject of this bias allegation was never entered into evidence.

Thus, Pie Plate claims that it was prejudiced by the trial court's refusal to permit it to demonstrate possible improper influence on the outcome of a report that was neither entered into evidence nor relied on by any expert. To state the claim is to resolve it. The trial court

exercises broad discretion in permitting cross-examination. *Gurecki* v. *Johnson,* 175 Conn. 297, 298, 398 A.2d 311 (1978). Here, the trial court allowed Pie Plate to cross-examine Waslenchuk about possible bias. The trial court did not abuse its discretion by curtailing further cross-examination related to possible bias related to a report that was not material to the case.

Pie Plate also cites as error the trial court's refusal to admit a telephone log into evidence. Because Pie Plate neglected to object to the trial court's ruling, however, we decline to review this claim. Practice Book §§ 4185 and 288; *Skinner* v. *Skinner,* 154 Conn. 107, 110, 221 A.2d 848 (1966).

## IV

Pie Plate next claims that the trial court improperly refused to instruct the jury that it could draw an adverse inference from the defendant's failure to offer the testimony of Howard Phillips. Pie Plate elicited through cross-examination of other witnesses that Phillips, a Texaco employee, was available to testify. The plaintiff claims that because the evidence demonstrated that Phillips was an "integral participant" in the incident, the trial court should have given an adverse inference instruction.

Fact finders can draw adverse inferences from a party's failure to call an available and presumably favorable witness. *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960); *Gulack* v. *Gulack,* 30 Conn. App. 305, 314, 620 A.2d 181 (1993). "Under *Secondino,* two requirements must be satisfied: (1) The witness must be available; and (2) the witness must be one whom the party would naturally produce. . . . A witness who would naturally be produced by a party is one who is known to that party and who, by reason of his relationship to that party or to the issues, or both,

could reasonably be expected to have peculiar or superior information material to the case which, if favorable, the party would produce." (Citation omitted; internal quotation marks omitted.) *Gulack* v. *Gulack,* supra, 314.

The plaintiff established Phillips' availability but nothing else. Texaco presented three witnesses relevant to the contamination: Texaco's local field maintenance supervisor, a geologist with an environmental remediation firm that investigated the spill, and Waslenchuk. All three were directly involved with the incident and gave detailed testimony regarding it. Pie Plate's *Secondino* claim related to a Texaco employee who reviewed the firsthand reports of others on the scene. Pie Plate did not show that Phillips had peculiar or superior information regarding this incident. Thus, the second requirement for a *Secondino* instruction was not satisfied. The trial court did not abuse its discretion.

V

Pie Plate asserts that the trial court improperly instructed the jury on issues related to damages. Pie Plate requested that the trial court instruct the jury that, as a general partner of the partnership that owned and operated the restaurant, Pie Plate could recover the entirety of the damages to the restaurant.[2] The trial court refused the suggested instruction. Pie Plate claims that this refusal denied it $300,000 of its damage claim.

---

[2] Pie Plate requested the following instruction: "Ladies and Gentlemen, in the case you have just heard, there were two plaintiffs. The plaintiff Pie Plate was the tenant of the plaintiff land owner Mr. Frank Devino. Furthermore, you heard evidence that the Pie Plate, Inc. was a general partner of Pie Plate Associates, which evidence also showed was the owner of record of the Pie Plate restaurant located on Thomaston Avenue, Waterbury, Connecticut. Under our law, only a general partner may bring a lawsuit of this nature and therefore the filing and prosecution of the action by Pie Plate, Inc. is perfectly valid in order to prosecute the claim on behalf of Pie Plate Associates."

We conclude that in light of the jury's verdict in this case, we need not review this claim. Even if the trial court's refusal to instruct as requested was improper, it could not have affected the result of the case. According to the jury, Texaco was not the proximate cause of Pie Plate's damages. Thus, the jury never considered the amount of damages to which Pie Plate was entitled, and the instruction had no bearing on the verdict. We conclude that the trial court's instructions, even if improper, did not prejudice the plaintiff. See, e.g., *Kelley* v. *Bonney,* 221 Conn. 549, 586–87, 606 A.2d 693 (1992); *Blancato* v. *Randino,* 30 Conn. App. 810, 815–16, 622 A.2d 1032 (1993).

## VI

Pie Plate claims that the trial court improperly instructed the jury on statutes of limitation and superseding cause. Pie Plate cites no case law in its brief on this issue nor discusses its claim further than the bald and unsupported assertion that the trial court's action was prejudicial. Claims mentioned but not adequately briefed are deemed abandoned. *Corsino* v. *Telesca,* 32 Conn. App. 627, 634, 630 A.2d 154, cert. denied, 227 Conn. 931, 632 A.2d 703 (1993); *State* v. *Rumore,* 28 Conn. App. 402, 410–11, 613 A.2d 1328, cert. denied, 224 Conn. 906, 615 A.2d 1049 (1992). We decline, therefore, to review this claim.

## VII

Finally, Devino claims that the trial court should have taken judicial notice of the withdrawal of his action against Merit. The jury had been told of the Merit action at the start of trial and Texaco had cross-examined Devino about the Merit action and the similarity between the complaints in the two suits. The trial court refused to take judicial notice of Devino's affidavit that he had withdrawn his suit against Merit, ruling that to do so would prejudice the defendant late in the trial

by denying it an opportunity to question Devino about the basis for the withdrawal. The trial court stated that it would permit Devino to testify about the withdrawal, thereby protecting the defendant through cross-examination. Devino declined.

"Whether to take judicial notice of a fact is a function of the exercise of judicial discretion. *West Hartford* v. *Freedom of Information Commission,* 218 Conn. 256, 264, 588 A.2d 1368 (1991); *De Luca* v. *Park Commissioners,* 94 Conn. 7, 10, 107 A. 611 (1919); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 6.1.3, p. 119; 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 22. Where a ruling involves the exercise of the trial court's discretion, its action will not be disturbed unless it has abused that broad discretion. *Pool* v. *Bell,* 209 Conn. 536, 541, 551 A.2d 1254 (1989). In determining whether the trial court has abused its broad discretion, we will afford every reasonable presumption in favor of the correctness of its ruling. *State* v. *Leonard,* 31 Conn. App. 178, 190, 623 A.2d 1052 (1993); *Sturdivant* v. *Yale-New Haven Hospital,* 2 Conn. App. 103, 108, 476 A.2d 1074 (1984). The ultimate issue to be determined in a claim involving an alleged abuse of the trial court's discretion is whether the trial court could reasonably conclude as it did. *Walton* v. *New Hartford,* 223 Conn. 155, 171, 612 A.2d 1153 (1992); *DiPalma* v. *Wiesen,* 163 Conn. 293, 298–99, 303 A.2d 709 (1972); *State* v. *Leonard,* supra [190]." *Gemme* v. *Goldberg,* supra, 31 Conn. App. 537–38.

Our review of the record convinces us that the trial court did not abuse its discretion in declining to take judicial notice of the affidavit. Informing the jury through judicial notice would have prejudiced the defendant by depriving it of an opportunity to present to the jury the reasoning behind the withdrawal. Further, Devino could have avoided any prejudice by tes-

tifying that he had withdrawn. Therefore, we conclude that the trial court did not abuse its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.