RONALD E. MARTIN ET AL. *v.* JOHN SAMULIS
(8813)

NORCOTT, FOTI and CRETELLA, Js.

Argued December 3, 1990—decision released February 12, 1991

*Judith D. Meyer,* with whom, on the brief, were *Robert L. Hirtle, Jr.,* and *Dean B. Kilbourne,* for the appellant (defendant).

*Robert A. Ziegler,* for the appellees (plaintiffs).

NORCOTT, J. The defendant appeals from the judgment rendered, after a jury trial, in favor of the plaintiffs in a case involving the construction of a home in Farmington. The plaintiffs filed an action against the defendant construction manager which proceeded to trial on three counts alleging violations of Connecticut's Unfair Trade Practices Act (CUTPA), breach of contract and libel.[1] The defendant filed a counterclaim seeking moneys allegedly owed under the terms of the contract as a result of lost profits.

On appeal, the defendant challenges the trial court's failure (1) to set aside the verdicts on the grounds that they were excessive and contrary to the evidence, (2) to charge the jury, as requested, under *Secondino,* and (3) to charge the jury regarding fraud as requested by

---

[1] The plaintiffs withdrew two additional counts against the defendant on December 22, 1989.

the defendant. The defendant also claims that the trial court improperly charged the jury that a letter written by the defendant was libel per se.

From the evidence produced by the parties at trial, the jury could have reasonably found the following facts. The plaintiffs, Ronald E. Martin and Remco Contracting, Inc., were engaged in the construction business and related industries. In December of 1987, the plaintiffs contracted with the defendant, John Samulis, also known as John Casimir Samulis, for the construction of a house at 23 Valley View Drive in Farmington. Under the terms of the agreement, the defendant was to receive a weekly draw of $1100 plus 50 percent of the net profit on the house. The budget for the construction of the house was agreed upon at $150,000 with an additional $62,465 for additional costs and upgrades.

In May of 1988, serious problems arose between the parties that resulted in the termination of the defendant's services in the following month. The plaintiffs contended that the defendant (1) had vacated his role as supervisor of the construction of the house, (2) had breached a part of the agreement by failing to develop a home in a Bolton subdivision for which the Farmington house was to have been a model for showing, (3) had improperly taken portions of Remco's files concerning the Bolton and Farmington projects, and (4) had overrun the cost of the Farmington house by $80,000 attributable to kickbacks paid by the subcontractors to the defendant.

After he was fired, the defendant sent Martin a letter dated June 27, 1988. The defendant also sent copies of the letter to all of the project suppliers and subcontractors. The letter alleged that Martin was in financial difficulty and accused him of attempting to obtain lien waivers without payment to subcontractors.

On December 22, 1989, the jury returned verdicts in favor of the plaintiffs and awarded damages as follows: Count I (CUTPA), $7500; Count II (breach of contract), $20,000; Count IV (libel), $1 nominal damages. The jury also returned a plaintiffs' verdict on the counterclaim.[2] Additionally, the trial court awarded the plaintiffs punitive damages in the amount of $7500, attorney's fees of $6779 and costs of $582.[3] Thereafter, the trial court denied the defendant's motion to set aside the verdicts as excessive and contrary to the evidence.

## I

The defendant first argues that the trial court incorrectly refused to set aside the verdicts as excessive and contrary to the evidence. A trial court should proceed cautiously when faced with a motion to set aside a jury verdict. "A trial court's decision to set aside a jury verdict raises serious issues because of a litigant's constitutional right to have issues of fact and the assessment of damages determined by a jury. *Palomba* v. *Gray,* 208 Conn. 21, 25, 543 A.2d 1331 (1988); *Mather* v. *Griffin Hospital,* 207 Conn. 125, 138, 540 A.2d 666 (1988)." *Gold* v. *University of Bridgeport School of Law,* 19 Conn. App. 379, 380, 562 A.2d 570, cert. denied, 213 Conn. 801, 567 A.2d 832 (1989). Furthermore, a trial court should not set aside a verdict where it is apparent that there is evidence in the record on which the jury might reasonably base their conclusion; a verdict should, however, be set aside where the record clearly reveals that manifest injustice would result from the verdict. *Palomba* v. *Gray,* supra, 24. Against these standards, we find that the trial court in this case did not abuse its discretion in refusing to set aside the verdicts.

[2] The defendant has not challenged that part of the jury's verdict in favor of the plaintiff on the counterclaim.

[3] Although it is not clear from the record how the court's award of $14,279 was apportioned, the parties agree in their briefs that $7500 is attributable to punitive damages and $6779 to attorney's fees.

The defendant seems to claim that the evidence at trial was insufficient to support the verdicts. The essence of this argument appears to rest on the defendant's claim that the jury based its verdicts on evidence of a series of checks that had no relationship to the Valley View Drive construction project. Our review of the record, however, supports the conclusion that the evidence was relevant and was submitted to the jury for whatever weight the jury might accord to it.[4] At trial, Martin testified that the checks were related to the Valley View Drive project. It is "the province of the jury [to] determine the credibility of the witnesses and the weight to be accorded their testimony . . . ." *Kubec* v. *Foremost Foods Co.*, 179 Conn. 486, 487, 427 A.2d 391 (1980). From Martin's testimony it is clear that the jury could have reasonably concluded that the checks admitted into evidence supported the plaintiffs' claims regarding the Farmington house. Therefore, the defendant's insufficiency claim must fail.

The defendant also appears to argue that the verdicts were excessive merely because the jury should have returned verdicts in *his* favor. There is no merit to this claim.

A claim that a verdict is excessive raises a question of law; *Vandersluis* v. *Weil*, 176 Conn. 353, 358, 407 A.2d 982 (1978); and on appeal the determinative inquiry is whether the verdict so shocks the conscience as to compel a reviewing court's conclusion that it was due to partiality, prejudice or mistake. *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 544, 562 A.2d 1100 (1989).

The verdicts in this case were clearly within the province of the jury and fell within the "necessarily uncertain limits of [fair and] just damages." *Birgel* v. *Heintz,*

---

[4] The plaintiffs correctly point out that the defendant has not raised an evidentiary claim as to the admission of the checks.

163 Conn. 23, 28, 301 A.2d 249 (1972). The jury awarded the plaintiffs far less than the $80,000 in claimed kickbacks and overruns alleged in the complaint. Furthermore, pursuant to its authority under General Statutes § 42-110q (a), the trial court added $7500 in punitive damages to the jury's award in the same amount for the CUTPA claim. Thus, the jury only awarded a total of $27,501 of a total judgment of $41,780, which included attorney's fees and costs of $582 also set by the trial court. The jury's verdicts can hardly be considered to "shock the conscience" under our standards of law. Indeed, given the evidence before the jury regarding the libel count, the argument that a nominal award of one dollar is excessive warrants no further discussion.

## II

The defendant next claims that the trial court improperly refused to give a requested *Secondino* jury instruction with regard to the subcontractors who did not testify about the alleged kickbacks. The well established *Secondino* rule provides that " '[t]he failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause.' " *Secondino* v. *New Haven Gas Company,* 147 Conn. 672, 675, 165 A.2d 598 (1960). The party seeking the *Secondino* adverse inference instruction bears the burden of showing that he is entitled to it. *Shelnitz* v. *Greenberg,* 200 Conn. 58, 73, 509 A.2d 1023 (1986). That party must demonstrate that the witness (1) is available, (2) is one whom the party would naturally produce, and (3) has material or substantial testimony that is not cumulative or inferior to that which was offered. *Secondino* v. *New Haven Gas Co.,* supra; C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 11.5.4 (f).

All of these requirements must be strictly complied with. *Fontaine* v. *Coyle,* 174 Conn. 204, 209–12, 384 A.2d 616 (1978).

Initially, we note that our review of the record reveals that the defendant made no showing at trial that all the subcontractors on the Valley View Drive project were available as witnesses. Indeed, the defendant could have easily fulfilled this requirement as the evidence revealed that he hired and controlled all of the subcontractors. The defendant, as the party to benefit from the inference, has produced nothing in the record to demonstrate that all of the subcontractors were available as witnesses. See *Schelnitz* v. *Greenberg,* supra. Because the defendant merely invoked the *Secondino* rule through his requested instruction but provided us with nothing further on the record as to the availability of the witnesses, we are not persuaded that he has demonstrated that the *Secondino* charge is warranted. See *Taylor* v. *American Thread Co.,* 200 Conn. 108, 112, 509 A.2d 512 (1986). "The *Secondino* charge . . . should not be given unless there is a sufficient foundation to do so." *Schelnitz* v. *Greenberg,* supra, 75.

### III

The defendant next challenges the court's instruction regarding the claim of libel. We begin by again noting that the jury awarded the plaintiffs only a nominal award of one dollar on the libel count. A plaintiff's verdict with a nominal damages award ordinarily suggests that the jury found that despite the defendant's liability, the plaintiff failed to prove damages. *Malmberg* v. *Lopez,* 208 Conn. 675, 681–82, 546 A.2d 264 (1988). As such, nominal damages " 'exist only in name and not in amount.' *Sessa* v. *Gigliotti,* 165 Conn. 620, 622, 345 A.2d 45 (1973), and cases cited therein." *CEUI* v. *CSEA,* 183 Conn. 235, 252, 439 A.2d 321 (1981). Because the

defendant, in effect, prevailed on this count insofar as only nominal damages were awarded against him, the trial judge's inartful instruction on the question of libel per se could have resulted in only harmless error.

The defendant also claims, however, that the court's instruction on libel per se tainted the verdict on the CUTPA count because libel was also incorporated into that count.[5] In order for this court to determine whether the trial court's instruction on the CUTPA count was legally correct and sufficient to support the jury's verdict on that count, we would need the transcript of the charge itself. This is so because it well may be that the trial court adequately instructed the jury as to the elements of CUTPA and in so doing properly charged them that they could find that the libelous letter constituted a violation of CUTPA. However, the defendant has again failed to provide this court with a sufficient record to fully review his claim of error. It is the defendant's burden as the appellant to provide this court with an adequate record for review. *Bieluch* v. *Bieluch,* 199 Conn. 550, 551, 509 A.2d 8 (1986). Accordingly, we need discuss the merits of this third claim no further.

## IV

The defendant's final claim requires little discussion. The claim that the trial court improperly failed to charge the jury that the plaintiffs had to prove fraud by clear and convincing evidence is a curious one, since the plaintiffs never specifically alleged fraud in their complaint nor was it ever an issue at trial. The defendant's suggestion on appeal that the plaintiffs' claims

---

[5] Paragraph 5 (c) of the CUTPA count sets forth in pertinent part: "The Defendant, John Samulis, in writing, to the Plaintiffs subcontractors, suppliers and bankers, falsely accused the Plaintiffs of having financial difficulties . . . ."

in Count II (breach of contract) are tantamount to claims of fraud is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.