[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO SET ASIDE VERDICT
The plaintiffs, Jason Purzycki and Gary Purzycki, brought this action against the town of Fairfield, its Board of Education, and Joseph Walsh, principal of the Sherman School in Fairfield. In their action the plaintiffs sought to recover money damages for personal injuries sustained by the plaintiff, Jason Purzycki, at the Sherman School at which he was a student. The case was tried to a jury which found the plaintiffs' total damages to be $ 38,000, found the negligence of the plaintiff Jason Purzycki to be 40%, and found the negligence of the defendants to be 60%.[1] The defendants have filed a motion to set aside that verdict and a motion for judgment notwithstanding the verdict.
Viewing the evidence in a light most favorable to the plaintiff; Hanauer v. Coscia, 157 Conn. 49, 53, 244 A.2d 611
(1968); Zimny v. Cooper-Jarrett, Inc., 8 Conn. App. 407, 438,513 A.2d 1235 (1986), cert. denied, 201 Conn. 811, 516 A.2d 887
(1986); the jury could have found the following facts. On June 13, 1989, the plaintiff was a second grade student at the Sherman School, an elementary school in Fairfield. At about 12:30 p.m., Jason proceeded with his class to the "all purpose" room for lunch. The class was escorted to this room under the supervision of a teacher. Other classes also ate lunch in the all purpose room. While eating lunch in the all purpose room, the students were supervised by two adults. After eating lunch, the students in Jason's class were permitted to go to the playground for recess. On the playground, the students were supervised by adults. To get to the playground, Jason, as well as the students in his class, had been instructed to proceed down a hallway corridor on an individual, nonclass basis. There was no adult specifically assigned to supervise the corridor at this time. Rather, teachers were instructed to keep the doors to their classrooms open in order to hear or see if anything untoward occurred. On June 13, 1989, Jason finished his lunch and left the all purpose room. He retrieved his jacket and hat from his locker. Then, notwithstanding that the students were daily reminded by their teachers and principal not to run in the CT Page 8773 hallway, Jason proceeded to do so. As he ran toward a set of double doors to exit the building, another student who Jason did not and could not see, extended his leg and tripped Jason. Jason fell head first through the wire mesh window of one of the doors, sustaining injuries.
The case proceeded against the defendant Walsh, principal of the Sherman School, and the Board of Education based on the theory of negligence. The plaintiff abandoned his claim against the town and his claim of nuisance against the town and the board. Also, to simplify the jury's deliberations, the case was tried on the theory that the liability of the board of education would be coextensive with that of the defendant Walsh. The specifications of negligence on which the jury was charged were that the defendants were negligent in that they failed to assign one or more of the school's staff to monitor and/or supervise students in the corridor during lunch time and recess and in that they failed to monitor and/or supervise the corridor during the lunchtime and recess. Without exception being taken, the court did not charge on other specifications of negligence which were not supported by evidence.
As to liability, the court charged the jury, inter alia, that: "The second element which the plaintiff must prove is, did the defendant's failure to monitor or to assign staff to monitor or supervise the corridors subject pupils such as the plaintiff to imminent harm. Unless such imminent harm exists, the defendants were not under a duty to supervise all movements of students at all times.[2] `Imminent harm' has been defined as harm which is ready to take place, near at hand, impending, close in point of time."
General Statutes § 52-228b provides: "No verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action, stating the reasons relied upon in its support, filed and heard after notice to the adverse party according to the rules of the court." Section 320 of the Rules of the Superior Court provides in relevant part that motions to set aside a jury verdict "shall state the specific grounds upon which counsel relies." In their motion and at oral argument; Poisson v. Quality ElectricalContractors, Inc., 29 Conn. App. 151, 155, 612 A.2d 1232 (1992); the defendants argued that the jury could not reasonably have reached its verdict since there was no evidence supporting the imminent harm exception to the defendants' defense of qualified CT Page 8774 governmental immunity. The court agrees.
"The function of the trial court in setting a verdict aside . . . [is] well settled. The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. Palomba v. Gray, 208 Conn. 21,23-24, 543 A.2d 1331 (1988). The trial court should not set a verdict aside where there was some evidence upon which the jury could reasonably have based its verdict, but should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that [the jurors] or some of them were influenced by prejudice, corruption or partiality. Id., 24. Within these parameters, furthermore, the trial court may set a verdict aside even if the evidence was conflicting and there was direct evidence in favor of the party who prevailed with the jury. Id. Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . . Id. Limiting that discretion, however, is the litigants' constitutional right to have issues of fact determined by a jury where there is room for a reasonable difference of opinion among fair-minded jurors. Id., 25." (Internal quotation marks omitted.) American National Fire Ins.Co. v. Schuss, 221 Conn. 768, 774, 607 A.2d 418 (1992); accord,A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 206,579 A.2d 69 (1990); Matyas v. Minck, 37 Conn. App. 321, 325,655 A.2d 1155 (1995); Klingeman v. MacKay, 25 Conn. App. 217,225, 594 A.2d 18 (1991); Martin v. Samulis, 24 Conn. App. 85,88, 585 A.2d 1255 (1991).
"`The [common law] doctrines that determine the tort liability of municipal employees are well established. Although historically [a] municipality itself was generally immune from liability for its tortious acts at common law; Ryszkiewicz v.New Britain, 193 Conn. 589, 593, 479 A.2d 793 (1984) . . . . [municipal] employees faced the same personal tort liability as private individuals. Gordon v. Bridgeport Housing Authority,
[208 Conn. 161, 165, 544 A.2d 1185 (1988)]. Evon v. Andrews,211 Conn. 501, 505, 559 A.2d 1131 (1989). Over the years, however, [t]he doctrine of governmental immunity has provided some exceptions to the general rule of tort liability for municipal employees. Burns v. Board of Education, supra, 645. Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the CT Page 8775 performance of governmental acts. Id. Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. Gauvin v. New Haven,187 Conn. 180, 184, 445 A.2d 1 (1982). In contrast, `[m]inisterial' refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. Wright v. Brown,167 Conn. 464, 471, 356 A.2d 176 (1975)." (Internal quotation marks omitted.) Mulligan v. Rioux, supra, 229 Conn. 727. With no recent exceptions, the term "governmental acts" has been synonymous with acts which are the product of judgment and discretion.
The operative specifications of negligence against Principal Walsh were that "he failed to assign one or more of the school's staff to monitor and/or supervise students in the corridor during lunch time and recess and in that he failed to monitor and/or supervise the corridor during the lunchtime and recess." These allegations do not refer to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. The decision to allocate scarce human and financial resources to supervise students in a hallway at a particular time is a public duty of a supervisory nature obviously requiring the exercise of judgment and discretion. See e.g., Burns v. Board of Education, supra, 228 Conn. 645 (duty to sand and salt courtyard walkway conceded to be discretionary);Heigl v. Board of Education, 218 Conn. 1, 5, 587 A.2d 423
(1991) (promulgating a policy is a discretionary activity);Steibitz v. Mahoney, 144 Conn. 443, 448, 134 A.2d 71 (1957) (duty of chief of police to appoint, suspend or remove officers, held, governmental and discretionary). In Evon v. Andrews,211 Conn. 501, 506-507, 559 A.2d 1137 (1989), the court held allegations that an official failed "to make reasonable andproper inspections" of premises and failed "to conduct adequateinspections" connoted a discretionary duty. (Emphasis added.) Id., 506. While such words are not expressly alleged in the plaintiff's complaint, the gist of the plaintiff's claim is not that the defendant failed to supervise or provide supervision to the students generally, but that in a physically and temporally narrow and discrete place and time there was no adult situated in the hallway. Notably, the only evidence was not that there were no adults present, since there were teachers in rooms along the hallway with doors open by directive, but that they were not actually standing in the hallway. Thus, the duty allegedly breached is not only clearly governmental but discretionary. Indeed, this was not contested at trial. CT Page 8776
"The immunity from liability for the performance of discretionary acts by a municipal employee is subject to three exceptions or circumstances under which liability may attach even though the act was discretionary: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm; see, e.g., Sestito v. Groton, 178 Conn. 520,528, 423 A.2d 165 (1979); second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; see, e.g., General Statutes 7-108 creating municipal liability for damage done by mobs; and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence. See, e.g., Stiebitz v. Mahoney,144 Conn. 443, 448-49, 134 A.2d 71 (1957)." Evon v. Andrews, supra,211 Conn. 505.
"The only exception to the qualified immunity of a municipal employee for discretionary acts that is of relevance to the present case is the exception permitting a tort action in circumstances of perceptible imminent harm to an identifiable person." (Footnote omitted.) Burns v. Board of Education, supra,228 Conn. 645-646. In Heigl v. Board of Education, supra,218 Conn. 8, the supreme court stated that "[n]either the General Statutes nor our decisional law has ever stated that a board of education has a specific duty to supervise high school students." In Burns v. Board of Education, supra, 228 Conn. 640, however, the supreme court, citing General Statutes §§ 10-157,10-220,[3] held, without even citing Heigl, that a "superintendent of schools bears the responsibility for failing to act to prevent the risk of imminent harm to school children as anidentifiable class of beneficiaries of his statutory duty ofcare." (Emphasis added.) Id., 649. Based on Burns, this court did not even charge that the jury had to find that the plaintiff was an "identifiable person' to whom a duty was owed. Rather, without exception from the defendants, the court's charge assumed this.
The court did charge the jury that "the plaintiff must prove . . . [that] . . . the defendant's failure to monitor or to assign staff to monitor or supervise the corridors subject[ed] pupils such as the plaintiff to imminent harm." "The `discrete person/imminent harm' exception to the general rule of governmental immunity for employees engaged in discretionary CT Page 8777 activities has received very limited recognition in this state."Evon v. Andrews, 211 Conn. 501, 507, 559 A.2d 1131 (1989). While the term "imminence" is attended by some ambiguity; Alexander v.U.S. Dept. of HUD, 441 U.S. 39, 54 (1979); "imminent harm" has been defined as harm which is ready to take place, near at hand, impending, close in point of time. Webster's Ninth New Collegiate Dictionary (1991); People v. Victor, 62 Cal.2d 280,42 Cal.Rptr. 199, 211, 398 P.2d 391 (1965); State Department ofHuman Services v. Norther, 563 S.W.2d 197, 209 (Tenn.App. 1978), cert. denied; 20 Words Phrases-Imminent; cf. Jump v.Ensign-Bickford Co., 117 Conn. 110, 118, 167 A. 90 (1933). While there are relatively few, if any, occasions when some harm to a seven year old boy, not being directly "supervised" is not foreseeable, there was no evidence that the plaintiff, in travelling the brief distance from the "all purpose" room to the playground, was in imminent harm. True, the principal knew that if children were not watched they might run in the hall, and that if they ran in the hall they could get hurt. But to regard this as imminent harm would be to equate that term with mere foreseeability and to thereby transfer the governance of elementary schools, if not all public schools, from the principal's office or the superintendent's office to the courtroom with respect to student supervision. With the transfer of that governance would also transfer the final decision-making authority for the allocation of increasingly scarce human and financial resources for the education of our children. Courts, no less than the other branches of government, are not at liberty to ignore such personnel and fiscal realities. The endless exercise of second-guessing school officials in such sensitive — educationally and politically sensitive — discretionary functions is an exercise which courts and juries are ill-suited to undertake. Cf. Canton v. Harris, 489 U.S. 378,392 (1989); Fonfara v. Reapportionment Commission, 222 Conn. 166,184, 610 A.2d 153 (1992) (courts are often "untutored in political realities. . . ."). "The discretion to be exercised is a sound discretion, yet necessarily it must be a wide discretion in the performance of these governmental duties. . . . The affairs of government cannot be conducted with absolute exactitude, and public officials cannot be expected to act in all cases with certain judgment. Timidity and doubt would govern their performance of public duty if they acted in the consciousness that personal liability might follow, no matter how closely they followed their best discretion. Courts should not too closely scrutinize the acts of discretion on the part of the public official . . ., even though there be an erroneous CT Page 8778 exercise of discretion, when the good faith of the transaction is manifest and the most that the situation indicates is an error in judgment." Wadsworth v. Middletown, 94 Conn. 435, 440,109 A. 246 (1920). "[L]ocal autonomy of school districts is a vital national tradition." Dayton Board of Education v.Brinkman, 433 U.S. 406, 410 (1977). Control of schools by local authorities is essential to restore their true accountability in our governmental system to the citizenry and to the political process. Cf. Freeman v. Pitts, 503 U.S. 467, 490 (1992). Funds which might be expended for hallway supervision might better be allocated to academic matters, improved physical plant and maintenance (such as the removal of icy conditions giving rise to the injury in Burns), increased teacher salaries, or to tax relief. While the "imminent harm" component of the exception to governmental immunity has been cast in terms of when a governmental employee owes a duty to the identifiable person or class, it is, more appropriately, that point short of which policy considerations militate that tort liability not attach to the good faith discretionary decisions of municipal, supervisory officials.
The plaintiff posits that in Burns v. Board of Education,
supra, 228 Conn. 640, the Supreme Court held that school children are an identifiable class to which supervisory officials owe a duty of care, a duty which is breached when those officials fail to prevent "foreseeable" harm. It follows from the foregoing discussion that this court does not agree with this interpretation of Burns. Burns, it must be recalled, was a premises liability case. The certified issue in Burns was "`[w]hether there is a "foreseeable class of victim" exception to the governmental immunity doctrine which would include students allegedly the victims of improper school maintenance?'"
(Emphasis added.) Id., 228 Conn. 644. The Supreme court answered this question in the affirmative, declaring "that the superintendent of schools bears the responsibility for failing to act to prevent the risk of imminent harm to school children as an identifiable class of beneficiaries of his statutory duty of care." (Emphasis added.) Id., 649. But in Burns, as the court itself observed, "the plaintiff school child slipped and fell due to icy conditions on a main accessway of the school campus, during school hours, while the child was compelled by statute to be on those school grounds. Unlike the incident in Evon v.Andrews, supra, 211 Conn. 501, this accident could not have occurred at any time in the future; rather, the danger was limited to the duration of the temporary icy condition in this CT Page 8779 particularly `treacherous' area of the campus. Further, the potential for harm from a fall on ice was significant and foreseeable. Under these circumstances, we conclude that the plaintiff school child was one of a class of foreseeable victims to whom the superintendent owed a duty of protection in relationto the maintenance and safety of the school grounds, and accordingly governmental immunity is no defense." (Emphasis added.) Id., 650. Here, by contrast, the plaintiff complains of a policy whereby limited personnel have not been allocated to supervise a particular hallway which itself harbors no dangers or defects. This policy has existed for years without injury to anyone, according to the uncontroverted evidence. The plaintiff's injury could have occurred at any time, since it was the product not of the condition of the hallway but of his conduct and the spontaneous conduct of another child. Here, unlike Burns, there was no dangerous condition, no treacherous area, no imminent harm. While a duty was owing the plaintiff under Burns, since he was a member of an identifiable class, that duty did not become actionable in the absence of imminent harm to the plaintiff.
The court does not find the defendants' other arguments persuasive. Specifically, while it is a close call, the court finds that the jury could have reasonably inferred that the absence of an adult watching the plaintiff as he travelled from the "all-purpose" room to the playground was a substantial factor in causing the plaintiff to run in the hallway, believing he could do so with impunity. The jury could have inferred that the presence of adults was prophylactic, and the plaintiff testified that he did not usually run in the hallway.
The motion to set aside the verdict is granted and, since the plaintiff failed to prove a necessary element of his case, judgment is directed for the defendants.
BY THE COURT
Bruce L. LevinJudge of the Superior Court