## IN RE LORI BETH D. ET AL.*
### (7701)

DUPONT, C. J., DALY and NORCOTT, Js.

Argued November 9, 1989—decision released April 10, 1990

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*William L. Ankerman,* for the appellant (respondent).

*Daniel E. Lynch,* with whom, on the brief, was *Daniel E. Lynch, Jr.,* for the appellees (petitioners).

*Susan L. Miller,* with whom, on the brief, was *Robert E. Byron,* legal intern, for the minor children.

DUPONT, C. J. This is an appeal from the judgment of the trial court terminating the parental rights of the respondent father. The respondent first claims that the Probate Court transferred the action to the Superior Court without affording him notice and an opportunity to be heard in the Probate Court on the motion to transfer, thus divesting the Superior Court of subject matter jurisdiction. He also claims (1) that the trial court should have appointed a guardian ad litem for him, (2) that the adjudication date should have been the date the petition was filed rather than the date the trial started, and (3) that there was no clear and convincing evidence on which to base a decision to terminate his parental rights. We find no error.

The petition was filed in Probate Court by the children's mother pursuant to General Statutes § 45-61c. She sought termination of the respondent father's parental rights with respect to Lori Beth and Mary

Elizabeth D. on the bases of abandonment, pursuant to General Statutes § 45-61f (f) (1), and denial of care, guidance and control, pursuant to § 45-61f (f) (2). The respondent was served in hand on January 9, 1988, with notice of a hearing to be held in Probate Court on January 21, 1988. The respondent was present at the hearing in Probate Court, at which time he informed the court of his intention to contest the petition.

The petitioner, on January 25, 1988, filed a motion to transfer the matter to the Superior Court. On January 22, 1988, a copy of the motion was sent to the respondent at a local motel, in care of another named individual. The respondent filed no objection, oral or written, to the motion to transfer, and the motion was granted. The petition was thereafter transferred to the Superior Court in Hartford. On June 9, 1988, the maternal grandparents, who had previously been awarded guardianship of both children, filed a motion to amend, seeking to be joined as parties petitioner with respect to Lori Beth. Their petition alleged both of the statutory grounds originally raised as well as the additional ground of no ongoing parent child relationship. General Statutes § 45-61f (f) (3). The motion to amend was granted with respect to both intervention and the additional ground on June 9, 1988. A trial ensued, with proceedings on June 9, June 30, and July 1, 1988. At trial, the respondent raised no objection to the transfer. On November 3, 1988, the court issued its decision granting the petition for termination of the respondent's parental rights with respect to both children.

We must first determine whether the case was improperly transferred from the Probate Court to the Superior Court on the petitioner's motion, thereby divesting the trial court of subject matter jurisdiction. General Statutes § 45-61c (g) provides in relevant part: "Before a hearing on the merits in any case in which

a petition for termination of parental rights is contested in a court of probate, the court of probate shall, on the motion of any legal party except the petitioner or *may* on its own motion or that of the petitioner, under rules adopted by the judges of the supreme court, transfer the case to the superior court. . . ." (Emphasis added.) The statute does not provide for notice and hearing on the motion to transfer, and leaves the granting of such a motion by the petitioner to the discretion of the Probate Court, within the limits of the rules imposed on that court by our Supreme Court.

Rule 7.2 of the Probate Court Rules also imbues the Probate Court with discretionary power over such transfers: "Contested petitions for termination of parental rights *may,* in the discretion of the judge of probate be transferred from the court of probate to the juvenile court upon either the motion of the petitioner or that of the court itself." (Emphasis added.) The only Probate Rule addressing the availability of a hearing and notice of a hearing on a motion to transfer is Rule 7.6, which provides: "Upon receipt of a motion by the petitioner to transfer, the court of probate *may* set the time and place for a hearing on such motion to show cause why the matter should be transferred to the juvenile court for determination. Notice of *such* hearing shall be given to all parties in interest by certified mail or otherwise no later than 3 days prior to the date set by the court of probate for such hearing . . . ." (Emphasis added.) We read this rule to mean that whether a hearing is held on a petitioner's motion to transfer is within the discretion of the Probate Court, but that *if* the court, in fact, decides to hold a hearing, notice of "such hearing," in accordance with the procedure set out in Rule 7.6, becomes mandatory. Here, because the court, in the proper exercise of its discretion, chose not to hold a hearing on the motion, there was no proceeding of which to give notice. Further-

more, notice of the transfer motion itself was sent to the respondent on January 22, 1988, and he failed to object orally or in writing, at that time or during trial in the Superior Court, either to the transfer motion, or to the lack of a hearing or to the lack of notice of a hearing on that motion. Given the discretion conferred upon the Probate Court by General Statutes § 45-61c (g) and Probate Court Rule 7.6, we find that no notice of a hearing was required and that the petition was properly transferred to the Superior Court.

General Statutes § 45-61c (g) provides in part: "Upon transfer, the clerk of the court of probate shall transmit to the clerk of the superior court the original files and papers in the case. The superior court, upon hearing after notice [on the petition for termination] as provided in sections 45-61d and 45-61f, may grant the petition as provided in section 45-61f." The Superior Court upon transfer, therefore, had subject matter jurisdiction to hear and decide the matter.

The respondent next argues that the trial court should have appointed a guardian ad litem for him pursuant to General Statutes § 45-61e or, at a minimum, should have considered appointing a guardian ad litem for him because he had been diagnosed as mentally ill and was unable to explain where he had been or what he had been doing between January, 1984, and October, 1987. The petitioners correctly argue that because the respondent failed to raise this claim at trial, this court is limited to plain error review. *Polce* v. *Stop & Shop Cos.*, 4 Conn. App. 18, 19, 492 A.2d 206 (1985). Thus, the claimant must show not only plain error in the lower court's proceedings or reasoning, but also that he was prejudiced by it. *State* v. *Brown*, 187 Conn. 602, 613, 447 A.2d 734 (1982); *State* v. *Scott*, 10 Conn. App. 347, 522 A.2d 1245, cert. denied, 204 Conn. 804, 528 A.2d 1152 (1987).

Section 45-61e (a) provides: "When, with respect to any petition filed under section 17-43a, section 45-61c or section 45-61d, it appears that either parent of the child is a minor or incompetent, the court shall appoint a guardian ad litem for such parent. The guardian ad litem shall be an attorney-at-law authorized to practice law in Connecticut or any duly authorized officer of a child-placing agency if the agency is not the petitioner."

Thus, under the language of § 45-61e, a guardian ad litem *must* be appointed, pursuant to § 45-61e (a), where the respondent "appears incompetent." The respondent, however, offers no support for his statement that the court was required, at the very least to consider the possibility of appointing a guardian ad litem, and we can find none. Therefore, no plain error exists unless it is clearly demonstrated that the respondent, in fact, appeared incompetent, that a guardian ad litem should have been appointed for him, and that, nevertheless, none was appointed. Our review of the record indicates that there was sufficient information for the court reasonably to conclude that, despite his mental illness, the respondent did not appear incompetent. The court, therefore, need not have appointed a guardian ad litem. Moreover, the respondent has not offered any explanation as to how he was harmed by the court's failure to appoint a guardian ad litem. The failure of the court to make such an appointment, therefore, does not constitute plain error.

The respondent next argues that the court erred in using the date the trial began, rather than the date the petition was filed, as an adjudication date without, sua sponte, granting a continuance. The later date was apparently used because an additional ground of "no ongoing parent-child relationship" was added by the amended petition of the grandparents as to Lori Beth. This issue, like the previous one, was first raised on

appeal, and we, therefore, review it under the plain error doctrine. *State* v. *Brown,* supra.

Belated amendments to the pleadings are allowed except where the amendment will cause an unreasonable delay, mislead the opposing party, take unfair advantage of the opposing party or confuse the issues. *Lawson* v. *Godfried,* 181 Conn. 214, 216, 435 A.2d 15 (1980). The respondent did not ask for a continuance at the time the amendment was allowed and now offers no explanation as to how the granting of the motion to amend, without, sua sponte, granting a continuance, prejudiced him. He merely states that the date of adjudication should have been the date the petition was filed, rather than the date the trial began. He fails to offer any explanation of how his evidence with respect to the earlier date would have differed or how any such difference harmed him. We therefore conclude that there was no plain error as to this claim.

Finally, the respondent argues that the trial court erred in finding clear and convincing evidence on which to base its decision to terminate his parental rights. Under General Statutes § 45-61f (f), the court may terminate the parental rights of an individual if, on the basis of clear and convincing evidence, it finds that termination is in the best interest of the child *and* that (1) the parent has abandoned the child, i.e., has "failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child," or (2) he or she has, by acts of commission or omission, denied the child the "care, guidance or control necessary for his physical, educational, moral or emotional well-being," or (3) no ongoing parent child relationship exists *and* to allow further time for the establishment of the parent child relationship would be detrimental to the best interests of the child.

Thus, the language of § 45-61f (f) provides that the court may, in its discretion, grant a petition for termination of the parental rights of a nonconsenting parent if it finds, based on clear and convincing evidence, both that termination is in the best interest of the child and that one of the three specified grounds exists. The statutory ground of abandonment was found as to both children, as was the conclusion that termination was in their best interest. The respondent claims, however, that the trial court erred in finding by clear and convincing evidence that he had abandoned the children by failing to maintain a reasonable degree of interest, concern or responsibility as to their welfare.[1] General Statutes § 45-61f (f).

We will not disturb the trial court's findings that the parent has abandoned the child and that termination is in the best interest of a child unless "those findings are not supported by the evidence and are, in light of the evidence in the whole record, clearly erroneous." *In re Juvenile Appeal (84-3),* 1 Conn. App. 463, 478, 473 A.2d 795, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984). The trial court in this case found little dispute over the facts of the history of the children's relationship with their parents and grandparents. It based its finding of abandonment on the fact that from January, 1984, to October, 1987, the father made "no attempts at telephone calls, no gifts or cards or letters, no initiation of court action to secure visitation rights, no direct communication with the children's mother or legal custodians." On this basis, despite the respondent's personal problems during that period, the court found that he had, within the meaning of § 45-61f (f) (1),

---

[1] Although the court found no ongoing parent child relationship, that ground could be used as a basis for termination only with respect to Lori Beth, since it was included as a ground in only the second petition, which did not name Mary Elizabeth.

objectively "failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child[ren] . . . ."[2]

In considering whether to terminate the parental rights, the court also considered, as required, the factors listed in General Statutes § 45-61f (h) and made the statutorily required written findings.[3] The court found (1) that no services were provided to the respondent by any agency because he sought none, (2) that the respondent complied with the only court orders involved, which gave guardianship of Lori Beth to the maternal grandfather and of Mary Elizabeth to the maternal grandparents, (3) that the children had no

---

[2] The court also found no ongoing parent child relationship with either child. Although this could properly be used to fulfill the statutory requirement only as to Lori Beth, the trial court's application of it with respect to Mary Elizabeth does not vitiate the basis of the decision because the ground of abandonment was properly found as to both children and is a sufficient ground for termination where termination is found to be in the best interest of the child.

[3] The factors listed in that section, General Statutes § 45-61f (h), are: "(1) The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (3) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (4) the age of the child; (5) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (6) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

feeling for their father prior to an episode of his violent behavior and only anxiety following that episode, (4) that the children, then aged five and one-half and seven, had not seen their father for nearly five years, during which time they had received "secure and consistent nurturing" from their mother and maternal grandparents, (5) that the respondent had made no apparent effort to adjust his circumstances in order to make it in the best interest of either child to reside with him or even to visit with him and had maintained no contact or communication of any kind with their custodians during his nearly five year absence from their lives, and (6) that no unreasonable act of the mother or grandparents had prevented him from maintaining a reasonable relationship with the children prior to his disappearance in January, 1984. Having thus considered the six statutory factors, the court determined that the respondent's continued parental rights would jeopardize the children's well being, and that their emotional needs required complete severance of those rights. It, therefore, granted the petition for termination. Our review of the record indicates ample evidentiary support for all of the court's findings and conclusions of law.

There is no error.

In this opinion the other judges concurred.