[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO SET ASIDE VERDICT AND FOR NEW TRIAL
This was an action seeking damages on account of personal injuries. The case was tried to a jury which found that both the plaintiff and the defendant were 50 percent negligent. The jury awarded the plaintiff $7,253.15 in economic damages and $30,000 in non-economic damages. The plaintiff has moved to set aside the verdict.
Giving the evidence the most favorable construction in support CT Page 2730 of the verdict; Meaney v. Connecticut Hospital Assn., Inc.,250 Conn. 500, 509, 735 A.2d 813 (1999); Hanauer v. Coscia,157 Conn. 49, 53, 244 A.2d 611 (1968); the jury could have found the following. On October 6, 1993, the plaintiff, Jeremy Hackling, was at a job site in Stamford at which he had just demolished a building. He placed the debris from the building in a trailer attached to a truck owned by the defendant Casbro Construction and operated by the defendant's employee, Robert Poons. Poons, who was on top of the debris in the trailer had a conversation with the plaintiff, who was on the ground on the drivers side of the truck. The conversation was about a carpet that was coming out of the debris and hanging over the side of the trailer, and the necessity of doing something about it. The plaintiff told Poons that he was going to get a knife to cut off the carpet. The plaintiff walked away from the trailer to find a knife. He later walked back to the passenger side of the trailer. While he was standing within three feet of the side of the trailer, Poons threw a piece of concrete over the side of the trailer, striking the plaintiff. The plaintiff sustained a gash on the back of his head and was taken to the hospital where he was treated and released. Additional facts will be set forth as necessary.
 I
The plaintiff first argues that the jury could not reasonably have determined under the evidence that the plaintiff was 50 percent comparatively negligent. "A verdict must stand if it is one that a jury reasonably could have returned and the trial court has accepted." Sorrentino v. All Seasons Services, Inc.,245 Conn. 756, 773, 717 A.2d 150 (1998).
The defendant's September 20, 1999, answer and special defenses to the plaintiff's amended complaint alleged the following special defenses: "If the plaintiff suffered any of the injuries [and] damages as are alleged in his complaint, said injuries and damages were not caused by any negligence on the part of the defendant, but rather were caused by his own carelessness and negligence, in that:
1. He improperly loaded construction debris into the waste trailer so that it was too full, and had carpeting hanging over the side so that the trailer could not travel safely on the highway;
2. in that he failed to wear a helmet as required by the CT Page 2731 Occupational Safety and Health Act (OSHA);
3. in that he failed to warn the driver, Mr. Poons, that he was returning to the trailer, even though he could and should have done so in order to avoid an accident;
4. in that he was inattentive, and failed to keep a proper lookout so as to avoid falling debris; and
5. in that he failed to make reasonable and proper use of his faculties while working in a demolition area."[1]
"Contributory negligence is conduct which involves an undue risk of harm to the person who sustains it." Hoelter v. MohawkService, Inc., 170 Conn. 495, 501, 365 A.2d 1064 (1976). It "is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection . . . ." Restatement (Second) Torts § 463, (1965); see Hoelter v. MohawkService, Inc., supra, 170 Conn. 501; Olshefski v. Stenner,26 Conn. App. 220, 599 A.2d 749 (1991). "[T]o be guilty of contributory negligence, the plaintiff must have comprehended, or in the exercise of reasonable care should have realized, that risk or danger might result from the condition complained of, and that mere knowledge of that condition does not necessarily constitute knowledge or appreciation of the danger. . . . But the duty to exercise ordinary care to avoid injury includes the duty to exercise ordinary care to observe and appreciate danger or threatened danger, and one is conclusively presumed to know and appreciate dangers which, under the same or similar circumstances, would have been known or appreciated by an ordinarily prudent person." (Citations omitted.)Corrievau v. Associated Realty Corporation, 122 Conn. 253, 257-58,188 A. 436 (1936).
The jury could reasonably have found that the plaintiff demolished a building and that he, himself, loaded the debris and rubble therefrom into the defendant's trailer. This debris included all of the components of the demolished building including pieces of concrete of varying size. Although no one characterized the trailer as being "over-loaded," the height of the pile of debris in the trailer exceeded the height of the sides of the trailer. One item of debris, a carpet, hung over the side of the trailer. Before the load was fully secure, indeed while the defendant's employee, Robert Poons was atop the load and was still securing it, he and the plaintiff had a discussion about the need to remove the carpet. The plaintiff went to obtain CT Page 2732 a knife to cut the carpet off, while Poons continued his efforts to secure the load. The plaintiff, not wearing a hard-hat and without alerting Poons of his return in any way, then went to the side of the trailer where the carpet was hanging down. There had been no other people or activity on that side of the trailer. Poons threw a piece of concrete over the side of the trailer, striking the plaintiff.
"Knowledge of a dangerous condition generally requires greater care to meet the standard of reasonable care. See . . . Clark v. Torrington, 79 Conn. 42, 45, 63 A. 657 (1906). Pedestrians are required to act upon what they know and the failure so to act when there is nothing to prevent or excuse them from doing so is negligence which will prevent their recovery. . . . On the other hand, if a plaintiff knew of the dangerous condition of [an area] . . . but used reasonable care in passing over it, he would not be chargeable with contributory negligence. . . . Although the plaintiff in this case was not required to take an alternate route or detour because of his knowledge of the [dangerous condition], . . . he was bound to take the precautions that an ordinary prudent man would take to avoid the dangerous condition." (Citations omitted.) Rodriguez v. New Haven,183 Conn. 473, 479, 439 A.2d 421 (1981)
The jury could have reasonably found that the plaintiff, knowing the condition of the contents of the trailer and knowing that Poons was working on top of the trailer moving pieces of debris about, returned to the opposite side of the trailer, knowing that Poons did not see him, without alerting him. This was the functional equivalent of concealing himself from the defendant in a hazardous area. The jury could have reasonably found that the plaintiff negligently failed to warn Poons and failed to keep a proper lookout for his own safety. Moreover, the plaintiff entered this dangerous area without a hard-hat. There was evidence that this violated the standard of care. The jury could have found that the plaintiff did not act as a reasonably prudent person would have under the circumstances.
 II
The plaintiff claims that the jury's award of non-economic damages was inadequate. "The test that governs the propriety of the amount of an award in these circumstances is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the CT Page 2733 sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." (Internal quotation marks omitted.) Sorrentino v. All SeasonsServices, supra, 245 Conn. 772.
The issue of the plaintiff's damages was very hotly contested. There was conflicting evidence as to whether the plaintiff lost consciousness after being struck by the piece of concrete. He was taken by ambulance to the hospital where he was diagnosed as having suffered a deep laceration of the scalp and fracture of the occipital area. At the hospital there were no further neurologic findings. His laceration was sutured, and the plaintiff was released. Two days after the accident, the plaintiff was seen by Arthur Siegel, a physician, who noted the plaintiff's complaints of lightheadedness, headaches, irritability and difficulty concentrating. Siegel diagnosed the plaintiff as having post-concussive syndrome and a cervical sprain. On January 25, 1994, Siegel noted that the plaintiff still complained of having "some headaches." In a written report of that date, Siegel stated that when the plaintiff returned in two months, he would be checked "for post concussive syndrome including memory and concentration." The plaintiff never returned to Siegel.
There was evidence before the jury that this action was commenced in or around November, 1994. In March, 1995, the plaintiff was evaluated by Edward S. Tucker, a physician, "for evaluation of episodic recurrent headache associated with right posterior head pain, decreased concentration and memory, and increased irritability and mood changes." Tucker noted that "[n]eurological examination revealed the cranial nerves to be within normal limits. There was some slight tenderness on percussion over the right occipital bone. There was no evidence of any generalized or focal neurologic signs or symptoms." Tucker diagnosed a post-concussive syndrome secondary to the 1993 accident. Tucker's April 5, 1995 report was the last evidence from a medical doctor presented to the jury.
The plaintiff's chief claim of injury in the case was of a traumatic brain injury resulting in decreased concentration and memory, increased irritability and mood changes, and, especially, a markedly decreased IQ. His principal evidence in support of this claim was from the testimony of Kenneth W. Gilstein, a licensed clinical psychologist, who had administered written tests to the plaintiff. On cross-examination, however, Gilstein's CT Page 2734 qualifications for rendering such an opinion, his methodology and his opinion itself were severely impeached. The defendant presented the testimony of Kimberly Sass, also a licensed clinical psychologist, who had published in the area of the consequences of brain injury. Sass, who also had tested the plaintiff, opined that the symptoms which Gilstein ascribed to a traumatic brain injury were, in fact, predominantly sequelae of a learning disability from which the plaintiff had suffered all his life, for which he had been tested in grade school, and which had not been disclosed to, or had been concealed from, other health care providers. See Taddei v. Schwarz, 12 Conn. App. 659, 661,533 A.2d 892 (1987) (verdict not inadequate where testimony of plaintiff's medical experts undermined).
Despite protracted cross-examination, Sass was not successfully impeached. Although the jury could have found that it was reasonable for the plaintiff to have been evaluated by Gilstein, in light of the trauma that the plaintiff had sustained,[2] it is evident that the jury credited the opinion of Sass rather than that of Gilstein.
The plaintiff's parents and brother testified on his behalf, but the jury was at liberty to afford their testimony little or no weight. Griffin v. Nationwide Moving Storage Co., Inc.,187 Conn. 405, 422, 446 A.2d 799 (1982); Coombs v. Phillips,5 Conn. App. 626, 627, 501 A.2d 395 (1985). The plaintiff's wife did not appear or testify. There was evidence that the plaintiff operates a successful building demolition business. The jury could have found that the cognitive level necessary to operate such a business was inconsistent with the plaintiff's claims of permanent injury.
This court "must ascertain whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption." (Internal quotation marks omitted.) Nisbet v. Olmeda, 15 Conn. App. 6, 20,544 A.2d 642 (1988). In making this determination, the court is duty-bound to "accord great deference to a jury's award of damages. Litigants have a constitutional right to have factual issues determined by the jury. This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded. . . . This right is one obviously CT Page 2735 immovable limitation on the legal discretion of the court to set aside a verdict . . . . The amount of a damage award is a matter peculiarly within the province of the trier of fact, in this case, the jury." (Internal quotation marks omitted.) Beverly v.State, 44 Conn. App. 641, 645-46, 691 A.2d 1093 (1997). "The existence of conflicting evidence limits the court's authority to overturn a jury verdict. The jury is entrusted with the choice of which evidence is more credible and what effect it is to be given." Id., 647.
The jury certainly could have credited the opinion of the defendant's expert and rejected the opinion of the plaintiff's expert. Indeed, it almost certainly did so. The jury could have reasonably ascribed only some or none of the plaintiff's complaints to the 1993 accident. The award of noneconomic damages does not so shock the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption.[3] See Id., 641 (verdict of $5500 not inadequate where nature and extent of injuries were hotly contested and physicians disagreed as to existence of permanent disability attributable to accident); Geryk v. Atlantic RichfieldCo., 19 Conn. App. 585, 587-88, 563 A.2d 324, cert. denied,212 Conn. 820, 565 A.2d 539 (1989) (verdict of $10,000 not inadequate where jury could have rejected evidence of disability, most of which were based on subjective complaints, and there was no indication jury misapplied law); Nisbet v. Olmeda, supra,15 Conn. App. 19-20 (verdict of $20,000 for injuries sustained for gun shot to leg not inadequate); Taddei v. Schwarz, supra,12 Conn. App. 661 (verdict not inadequate where damages "hotly disputed" and testimony of plaintiff's medical experts undermined by revelation he had failed to tell them about related injuries);Sepe v. Deemy, 9 Conn. App. 524, 529-31, 520 A.2d 237 (1987) (verdict of $10,000 to 16 year old plaintiff who suffered fractured nose, fractured skull in frontal area, fractured lower orbital rim of right eye, and loss of taste and smell was not inadequate); Royer v. Hertz Corp., 9 Conn. App. 136, 140-41,516 A.2d 1372 (1986) (verdict not inadequate where "defendants presented expert testimony that virtually all of the plaintiff's injuries were unrelated to the . . . accident. Furthermore, the jury was not obliged to believe the testimony of the plaintiff or her experts.").
 III
The plaintiff complains that: CT Page 2736
 The court precluded [him] from presenting the testimony of Vernon Koch, a fact witness whom the plaintiff sought to present in direct rebuttal to the testimony of the defendant's expert, Kimberly Sass; Ph.D. The basis for this ruling, as articulated by the Court, was that Mr. Koch should have been called to testify during the plaintiff's case-in-chief, despite the fact that the issue upon which evidence was to be elicited from Mr. Koch was not raised until the defendant's own expert testified in the defendant's case.
The following additional facts are necessary for the resolution of this claim. Shortly before the case was scheduled to begin trial in January, 1999, the plaintiff disclosed at a pretrial that he was now claiming that he suffered from a traumatic brain injury which had depressed his IQ. In response, the defendant indicated that it wanted the plaintiff to be examined by its own expert. The defendant retained Kimberly Sass, Ph.D., a clinical psychologist, for this purpose. Sass, however, insisted on having all of the plaintiff's scholastic records before examining the plaintiff. By pleading dated May 18, 1999, the defendant filed a motion for permission to seek additional discovery which stated: "The plaintiff in this case claims to have suffered a traumatic brain injury as a result of the subject accident. The defendant would like to obtain an Independent Medical Examination with a neurologist and/or clinical psychologist. In order to properly evaluate the plaintiff's claim it will be necessary for the defendant to provide the IME physician with copies of the plaintiff's scholastic records from both before and after the subject accident, including the results of any aptitude tests that may have been administered by the school system." Although all such records were not produced, the plaintiff represented to the defendant that "[w]e have produced all school records in our possession." (Emphasis in original.) (Court exhibit 10 for identification).[4] Based on the records which the plaintiff produced, Sass examined the plaintiff immediately before trial and rendered a report.
The school records which the plaintiff had disclosed to the defendant were admitted as plaintiff's exhibits at trial. However, Sass testified that the plaintiff did not suffer from a traumatic brain injury and that the anomaly in the defendant's IQ was a consequence of a learning disability which the plaintiff had all of his life. Sass opined that the learning disability had manifested itself when the plaintiff was in grade school and was CT Page 2737 evident in the plaintiff's grade school records. (Plaintiff's Exhibits 12, 13, 14).
On cross examination, the plaintiff elicited from Sass that his opinion was inconsistent with the plaintiff's getting along well with his classmates and being considered a leader in school. The court allowed the plaintiff to make this inquiry, given the broad latitude that is owing on cross-examination. However, these matters — how well the plaintiff got along with his classmates and whether he was a leader in school — were not matters that were raised on direct examination of Sass by the defendant. They were raised for the first time on cross-examination by the plaintiff.
After Sass had completed his testimony and had left for Florida
for professional purposes, the plaintiff sought to have introduced the plaintiff's fifth grade report card. On the back of the report, under "additional comments," the following was hand-written: "Jeremy is doing beautifully at I.L.S. [Immanuel Lutheran School]. He gets along great with his classmates and seems to be prompt proud with school work/Jeremy has done real well this year. He is quite a leader. At times he tends to be lazy and careless with his work but is really quite capable. He's been a nice addition to our class." The defendant objected. This report card had not been produced for Sass's consideration. The plaintiff claimed that he had produced all school records in his possession, but that this report card had been in the possession of his mother. In order to authenticate the report card, the plaintiff called Mr. Koch. The court disallowed the report card as a full exhibit.
"It is well settled that the admission of rebuttal evidence lies within the sound discretion of the trial court." Gomeau v.Gomeau, 242 Conn. 202, 208, 698 A.2d 818 (1997). " [T]he usual rule will exclude all evidence which has not been made necessary by the opponent's case . . . ." (Emphasis added; internal quotation marks omitted.) Pie Plate, Inc. v. Texaco, Inc.,35 Conn. App. 305, 645 A.2d 1044, cert. denied, 231 Conn. 935,650 A.2d 172 (1994). "The rule as to rebuttal evidence is thus stated in Hathaway v. Hemingway, 20 Conn. 191, 195 (1850): `The rule upon this subject is a familiar one. When, by the pleadings, the burden of proving any matter in issue is thrown upon the plaintiff, he must, in the first instance, introduce all the evidence upon which he relies to establish his claim. He cannot, as said by Lord Ellenborough, go into half his case, and reserve CT Page 2738 the remainder. . . . The same rule applies to the defence. . . . After he has rested, neither party can, as a matter of right, introduce any farther testimony which may properly be considered testimony in chief.' Professor Wigmore states the rule as follows: `It is perfectly clear that the orderly presentation of each party's case would leave the proponent nothing to do, in his case in rebuttal, except to meet the new facts put in by the opponent in his case in reply. Everything relevant as a part of the case in chief would naturally have been already put in; and a rebuttal is necessary only because, on a plea in denial, new subordinate evidential facts have been offered, or because, on an affirmative plea, its substantive facts have been put forward, or because, on any issue whatever, facts discrediting the proponent's witnesses have been offered. To discriminate between the first of these classes and the opponent's testimony merely denying the same facts that the proponent's witnesses had originally affirmed, is no doubt often difficult, and it is then not easy to say whether the proponent's testimony in rebuttal might or might not as well have been put in originally; yet the principle involved is clear. Moreover, practical disadvantages that would result from abandoning the natural order of evidence are, first, the possible unfairness to an opponent who has justlysupposed that the case in chief was the entire case which he hadto meet, and, secondly, the interminable confusion that would becreated by an unending alternation of successive fragments ofeach case which could have been put in at once in the beginning.' 4 Wigmore, Evidence (2d Ed.) § 1873." (Emphasis added.) Roberto v.Honeywell, Inc., 43 Conn. App. 161, 167-68, 681 A.2d 1011, cert. denied, 239 Conn. 941, 684 A.2d 712 (1996).
The rebuttal evidence was disallowed for three reasons. First, the report card should have been produced to the defendant earlier. Cf. Pie Plate, Inc. v. Texaco, Inc., supra,35 Conn. App. 310-11 (expert not timely disclosed could not be called as expert in rebuttal). The plaintiff's claim that he had been candid by stating that he had produced all school records in his
possession, because the fifth grade report card was in his mother's possession, is disingenuous. Common experience is that one of two people has possession of a child's report card by the time he reaches adulthood: the parent or the child. Second, the manner of this portion of plaintiff's cross-examination of Sass reflects that it was manufactured as a vehicle to introduce in rebuttal a document that in fairness should have been produced earlier and offered during the plaintiff's case-in-chief. CompareState v. Gaskin, 176 Conn. 220, 221, 405 A.2d 652 (1978) CT Page 2739 (rebuttal of alibi proper where no indication state deliberately held evidence). The fifth grade report card containing handwritten comments was not evidence made necessary by thedefendant's case. Pie Plate, Inc. v. Texaco, Inc., supra,35 Conn. App. 310. Finally, it would have been manifestly unfair to the defendant to permit the introduction of the exhibit at a time when Sass had left the jurisdiction and could not be recalled to explain his earlier testimony. "A litigation strategy that features surprise to the adversary is no longer to be tolerated." (Internal quotation marks omitted.) Baxter v. CardiologyAssociates of New Haven, P.C., 46 Conn. App. 377, 385,699 A.2d 271, cert. denied, 243 Conn. 933, 702 A.2d 640 (1997). It was not
tolerated here.
 IV
The plaintiff next claims that the court erroneously denied (a) his objection to the defendant's request to amend its answer and special defenses and (b) his request to revise directed thereto.
 A.
The following additional facts are necessary in order to resolve this claim. On August 14, 1997, the defendant filed an answer and a special defense. The special defense alleged: "If the plaintiff sustained any injuries or damages as are alleged in his complaint, said injuries or damages were proximately caused by the plaintiff's own negligence at said time and place in that he failed to keep a proper lookout, and was inattentive to his surroundings, and in that he failed to wear a hard-hat on a construction site."
In September, 1999, the court allowed the plaintiff to amend his complaint to identify, inter alia, the employee of the defendant who was the alleged active tortfeasor and to allege a claim for a traumatic brain injury. Shortly thereafter, after the jury had been selected, the defendant requested leave to amend its answer and special defense. The defendant's proposed special defense stated: "If the plaintiff suffered any of the injuries or damages as are alleged in his complaint, said injuries and damages were not caused by any negligence on the part of the defendant, but rather were caused by his own carelessness and negligence, in that: [1] He improperly loaded construction debris into the waste trailer so that it was too full, and had carpeting CT Page 2740 hanging over the side so that the trailer could not travel safely on the highway; [2] in that he failed to wear a helmet as required by the Occupational Safety and Health Act (OSHA); [3] in that he failed to warn the driver, Mr. Poons, that he was returning to the trailer, even though he could and should have done so in order to avoid an accident; [4] in that he was inattentive and failed to keep a proper lookout so as to avoid falling debris; and [5] in that he failed to make reasonable use of his faculties while working in a demolition area."[5]
Immediately before trial the court heard and overruled the plaintiff's objection to the amendment.
What was said in Wassell v. Hamblin, 196 Conn. 463, 466-67,493 A.2d 870 (1985), where the defendant was permitted to amend his answer to just prior to jury selection to include, for the first time, seat belt defenses, is applicable here. "[T]he plaintiffs claim . . . that the trial court erred in allowing the defendant to amend his answer to include the special defenses, claiming that the amendments were untimely and clearly prejudicial. The grant or denial of a motion to amend the pleadings is a matter within the discretion of the trial court. Tedesco v. Julius C.Pagano, Inc., 182 Conn. 339, 341, 438 A.2d 95 (1980); Wallingfordv. Glen Valley Associates, Inc., 190 Conn. 158, 161, 459 A.2d 525
(1983). In the interest of justice courts are liberal in permitting amendments; unless there is a sound reason, refusal to allow an amendment is an abuse of discretion. Tedesco v. JuliusC. Pagano, Inc., supra, [182 Conn. 339]. The trial court is in the best position to assess the burden which an amendment would impose on the opposing party in light of the facts of the particular case. The essential tests are whether the ruling of the court will work an injustice to either the plaintiff or the defendant and whether the granting of the motion will unduly delay a trial. . . . Wallingford v. Glen Valley Associates, Inc.,
supra, [190 Conn.] 161-62, quoting Tedesco v. Julius C. Pagano,Inc., supra, [182 Conn.] 341-42. At the time the amendments were granted, although the plaintiffs did argue untimeliness, they did not request any continuance nor did they make any colorable claim of prejudice. Under the circumstances, we cannot find an abuse of discretion in granting the amendments." (Citations omitted; internal quotation marks omitted.) See also DuBose v. Carabetta,161 Conn. 254, 263, 287 A.2d 357 (1971) ("In exercising its discretion with reference to a motion for leave to amend, a court should ordinarily be guided by its determination of the question whether the greater injustice will be done to the mover by denying him his day in court on the subject matter of the CT Page 2741 proposed amendment, or to his adversary by granting the motion, with the resultant delay.") "Belated amendments to the pleadings are allowed except where the amendment will cause an unreasonable delay, mislead the opposing party, take unfair advantage of the opposing party or confuse the issues. Lawson v. Godfried,181 Conn. 214, 216, 435 A.2d 15 (1980)." In re Lori Beth D.,21 Conn. App. 226, 232, 572 A.2d 1027 (1990)
The court did disallow the amendment insofar as it sought to inject OSHA into the case. Indeed, after the defendant made reference to OSHA in a question to the plaintiff, the court ruled that no further reference was to be made to OSHA and instructed the jury that the defendant's hard-hat defense was governed by common law negligence principles, not by reference to any statute.[6] In the context of the facts of this case, the defendant's defense of failure to warn was only a modest enlargement of its earlier defense that the plaintiff "failed to keep a proper lookout and was inattentive to his surroundings. . . ." In other words, had the plaintiff been attentive to his surroundings, he would have warned Poons that he was standing aside the loaded truck. What was new in the defendant's special defenses was the allegation that the plaintiff improperly loaded construction debris into the trailer. As to this claim, however, there was no prejudice to the plaintiff nor did he move for a continuance. See Wassell v.Hamblin, supra, 196 Conn. 466-67; Eisenbach v. Downey,45 Conn. App. 165, 182, 694 A.2d 1376, cert. denied, 241 Conn. 926,696 A.2d 1264, (1997) ; Moore v. Sergi, 38 Conn. App. 829, 838,664 A.2d 795 (1995); In re Lori Beth D., supra 21 Conn. App. 232;Baker v. Cordisco, 37 Conn. App. 515, 523, 657 A.2d 230, cert. denied, 234 Conn. 907, 659 A.2d 1207 (1995); Henry v. Klein,15 Conn. App. 496, 501, 545 A.2d 575 (1988); Esposito v. Presnick,15 Conn. App. 654, 660, 546 A.2d 899, cert. denied,209 Conn. 819, 551 A.2d 758 (1988); In re Carl O.,10 Conn. App. 428, 437, 523 A.2d 1339, cert. denied,204 Conn. 802, 525 A.2d 964 (1987); Grievance Committeev. Goldfarb, 9 Conn. App. 464, 477, 519 A.2d 624 (1987);Echols v. Balck, 9 Conn. App. 620, 621,520 A.2d 651 (1987). "If an amendment is allowed at trial and the opponent wants to raise an abuse of discretion issue on appeal, he should immediately move for a continuance in the trial in order to defend against the new issue." Moore v. Sergi, supra,38 Conn. App. 843 n. 6. The plaintiff did not do so. CT Page 2742
 B.
The plaintiff also claims that the court committed error in not granting his request to revise the defendant's amended special defenses.
The request to revise, in part, was a regurgitation of the plaintiff's objection to defendant's amended answer and special defense. That, of course, is not the office of a request to revise. See Kileen v. General Motors Corporation,36 Conn. Sup. 347, 349, 421 A.2d 874 (1980) ("A request to revise is permissible to obtain information so that a [party] may intelligently plead and prepare his case for trial but it is never appropriate where the information sought is merely evidential."); see also D'Ulisse-Cupo v. Board of Directors ofN.D.H.S., 202 Conn. 206, 220, 520 A.2d 217 (1987); Royce v.Westport, 183 Conn. 177, 180, 439 A.2d 298 (1981). Insofar as the request sought the deletion of any reference to OSHA it was, as observed supra, granted. Insofar as it sought a revision of the defendant's statute of limitations defense, it was mooted because the defendant never pursued that defense.
The granting of a request to revise rests in the discretion of the trial court. Cervino v. Coratti, 131 Conn. 518, 520,41 A.2d 95 (1945); Dombroski v. Abrams, 116 Conn. 454, 455,165 A. 457 (1933); Kileen v. General Motors Corp., supra,36 Conn. Sup. 347; Sebastianello v. Hamden,10 Conn. Sup. 283 (1940). The court is not convinced that it erred to the extent it denied the plaintiff's request to revise.
 V
The plaintiff claims that the trial court committed error when it "denied the plaintiff's request for jury interrogatories with respect to the defendant's multiple special defenses on the grounds that such requests were untimely and should have been submitted with the plaintiff's original requests to charge the jury." The plaintiff argues that "this ruling ignored the fact that the plaintiff's original requests to charge were submittedprior to the defendant's filing of four new special defenses just before the start of evidence in this trial. Similarly, the original requests to charge were filed prior to the court's having ruled on multiple motions attacking the propriety of the untimely filing and the legal sufficiency of the several new CT Page 2743 special defenses; such issues were not finally decided until well after the commencement of evidence. Notwithstanding, in light of the court's permitting the special defenses, the plaintiff was entitled to submit the special interrogatories to the jury, and the court erred in refusing the request." (Emphasis in original.)
"`The function of jury interrogatories is to provide a guide for the jury's reasoning, and a written chronicle of that reasoning.' Hammer v. Mount Sinai Hospital, 25 Conn. App. 702,710, 596 A.2d 1318, cert. denied, 220 Conn. 933, 599 A.2d 384
(1991). `Where two or more counts have been alleged in a complaint, or when two or more causes of action are incorporated in one count, as here, the defendant has the right to save himself from the implication of a general verdict by seeking from the jury answers to apt and proper interrogatories. . . . In such situations, it is the duty of the trial court, upon request, to submit such interrogatories as would accomplish this purpose.' (Citation omitted.) Hartford v. Anderson Fairoaks, Inc.,7 Conn. App. 591, 594, 510 A.2d 200 (1986)." Chapman v. Norfolk DedhamMutual Fire Ins. Co., 39 Conn. App. 306, 314-15, 665 A.2d 112, cert. denied, 235 Conn. 925, 666 A.2d 1185 (1995). A plaintiff also may receive protection against the application of the general verdict rule by the use of properly framed interrogatories. Szachon v. Windsor, 29 Conn. App. 791, 794,618 A.2d 74 (1992). "[A] trial court has broad discretion to regulate the manner in which interrogatories are presented to the jury, as well as their form and content." Hammer v. Mount Sinai Hospital,
supra, 25 Conn. App. 708.
"Written requests to charge the jury and written requests for jury interrogatories must be filed with the clerk before the beginning of arguments or at such an earlier time as the judicialauthority directs . . . ." (Emphasis added.) Practice Book § 16-22. The first day that counsel stepped into the courtroom, on September 8, 1999, the court ordered that requests to charge be filed no later than September 10, 1999. No objection was taken to that order, which applied to the filing of jury interrogatories, since "interrogatories normally must be explained to the jury in the charge . . . ." Pedersen v. Vahidy, 209 Conn. 510, 515,552 A.2d 419 (1989). Of course, the court would have been lenient had a request been made during the trial to file additional or amended requests to charge. On September 24, 1999, the court allowed the defendant to file amended special defenses which, as discussed supra, allowed the defendant to add to his special defenses that the plaintiff had improperly loaded the trailer and CT Page 2744 had failed to warn Poons that he was returning to the trailer. This amendment, however, did not automatically vacate the court's prior order. It gave the plaintiff the privilege of timely requesting that proper interrogatories be submitted to the jury. Nonetheless, not until the morning of October 5, 1999,immediately before the court called out the jury for finalarguments and charge, did the plaintiff make a request for special jury interrogatories.
It is not a matter of simply throwing jury interrogatories into the day's pot. If "charging a jury is not a matter of abracadabra"; Andres v. United States, 333 U.S. 740, 765,68 S.Ct. 880, 92 L.Ed. 1055 (1948) (Frankfurter, J., concurring); neither is the submission of interrogatories. The court would have been required to hold a hearing on the interrogatories; Falkv. Schuster, 171 Conn. 5, 8, 368 A.2d 40 (1976) (counsel must be given the opportunity for proper comment on request for jury interrogatories); and, at the very least, recess if not adjourn for the day, carefully review the proposed interrogatories for conformance with the pleadings, evidence and law, redraft them if necessary, and revise the jury charge, which had been in the making for some time, to include a proper explanation of the interrogatories to the jury.
In presiding over any trial, a trial judge must engage "in balancing the various interests concerned . . . ." State v.Williams, 195 Conn. 1, 8, 485 A.2d 570 (1985). "Judges must be firm and create the expectation that a case will go forward on the specific day that it is assigned. In order to dispose of our cases in a fair, timely, and efficient manner, everyone involved must be present on time, prepared, and ready to go forward. Because both courtrooms and judges are necessarily limited in number, burgeoning caseloads require that efficient use be made of the available space and judicial time." In re Mongillo,190 Conn. 686, 691, 461 A.2d 1387 (1983).
In addition, in a civil jury trial, the court should "promote good public relations" with the jury. Tessmann v. Tiger LeeConstruction Co., 228 Conn. 42, 57, 634 A.2d 870 (1993); seeBoehm v. Kish, 201 Conn. 385, 394, 517 A.2d 624 (1986) (preferable for court not to grant motion for directed verdict while jury is deliberating). The jury, as well as the court and other counsel, had arrived that day for the purpose and expectation of having closing arguments, instructions and deliberations. Filing jury interrogatories almost literally at CT Page 2745 the last minute did not merely visit surprise on the defendant but would have created an unnecessary hiatus for the members of the jury who were advised the previous day that when they returned they would hear final arguments and the court's charge, and begin their deliberations.
There was no excuse for this. With two lawyers sitting at counsel table throughout the trial, the plaintiff could have timely requested that interrogatories be submitted to the jury. Because the plaintiff did not do so, his request was properly denied.
Moreover, even a cursory examination of the plaintiff's proposed jury interrogatories reveals that they were improper in form. For example, the interrogatories asked the jury whether the defendant had a duty, with respect to the several claims in the special defense, and then asked whether the defendant was negligent with respect to those claims. First, duty is a legal conclusion, a question of law for the court. Lodge v. Arett SalesCorporation, 246 Conn. 563, 571, 717 A.2d 215 (1998). "Only if a duty is found to exist does the trier of fact go on to determine whether the defendant has violated that duty." Id. Second, "a duty of care is an essential element of negligence . . . ."Martins v. Connecticut Light Power Co., 35 Conn. App. 212, 219,645 A.2d 557, cert. denied, 231 Conn. 951, 648 A.2d 154 (1994). To ask a jury, in this context, whether the plaintiff owed a duty and then ask if the plaintiff was negligent is misleading; see 57A Am. Jur.2d, Negligence § 844 (1989);[7] or at least redundant. "[I]nterrogatories should be as few in number as will reasonably present the . . . claims. Special interrogatories concerning . . . those which split up the several causes of action into several interrogatories concerning the same cause, should not be presented to the jury by the court." Callahan v.Jursek, 100 Conn. 490, 494, 124 A. 31 (1924); see also MerrillLynch, Pierce, Fenner Smith, Inc. v. Cole, 189 Conn. 518,457 A.2d 656 (1983) (trial court properly discarded redundant interrogatory)
 VI
The plaintiff argues that the court erroneously "refused to instruct the jury in accordance with the plaintiff's request to charge as to the issues of comparative negligence and the plaintiff's alleged failure to wear a hard-hat or failure to warn the defendant's employee that he was approaching the accident CT Page 2746 scene, despite the fact that [the] Court's own acknowledgment that the special defenses filed by the defendant were not causally related to the plaintiff's injuries." For the same reason that appellate review of this claim would be foreclosed under the general verdict rule, review of this claim is impossible here.
"Under the general verdict rule, if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. . . . Thus, in a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall. . . . The rule rests on the policy of the conservation of judicial resources, at both the appellate and trial levels. . . .
"On the appellate level, the rule relieves an appellate court from the necessity of adjudicating claims of error that may not arise from the actual source of the jury verdict that is under appellate review. In a typical general verdict rule case, the record is silent regarding whether the jury verdict resulted from the issue that the appellant seeks to have adjudicated. Declining in such a case to afford appellate scrutiny of the appellant's claims is consistent with the general principle of appellate jurisprudence that it is the appellant's responsibility to provide a record upon which reversible error may be predicated. . . .
"In the trial court, the rule relieves the judicial system from the necessity of affording a second trial if the result of the first trial potentially did not depend upon the trial errors claimed by the appellant. Thus, unless an appellant can provide a record to indicate that the result the appellant wishes to reverse derives from the trial errors claimed, rather than from the other, independent issues at trial, there is no reason to spend the judicial resources to provide a second trial. . . .
"Therefore, the general verdict rule is a rule of appellate jurisprudence designed to further the general principle that it is the appellant's responsibility to provide a record upon which reversible error may be predicated. . . . A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury. CT Page 2747
"[The Supreme Court] has held that the general verdict rule applies to the following five situations: (1) denial of separate counts of a complaint; (2) denial of separate defenses pleaded as such; (3) denial of separate legal theories of recovery or defense pleaded in one count or defense, as the case may be; (4) denial of a complaint and pleading of a special defense; and (5) denial of a specific defense, raised under a general denial, that had been asserted as the case was tried but that should have been specially pleaded." (Citations omitted; internal quotation marks omitted.) Dowling v. Finley Associates, Inc., 248 Conn. 364,371-72, 727 A.2d 1245 (1999).
This case falls under the third situation. In the first special defense, the defendant pleaded, and the plaintiff denied, that the plaintiff (1) "improperly loaded construction debris into the waste trailer so that it was too full, and had carpeting hanging over the side so that the trailer could not travel safely on the highway"; (2) "failed to wear a helmet"; (3) "failed to warn the driver, Mr. Poons, that he was returning to the trailer, even though he could and should have done so in order to avoid an accident"; (4) "was inattentive and failed to keep a proper lookout so as to avoid falling debris"; and (5) "failed to make reasonable use of his faculties while working in a demolition area." The plaintiff claims that the court erred in its instructions with respect to two of these defenses. All five, however, were submitted to the jury, and it is impossible for this court to divine on which defense or defenses the jury based its determination of comparative negligence.
The plaintiff could have avoided the consequences of the general verdict rule by making a "proper request" for jury interrogatories. Szachon v. Windsor, supra, 29 Conn. App. 794-95. Since, however, the plaintiff's request was not timely, it was not proper. G. F. Construction, Inc. v. Cherry Hill Construction,Inc., 42 Conn. App. 119, 124, 679 A.2d 32 (1996) (untimely motion, held, "not proper.")
 VII
The plaintiff next complains that the plaintiff's verdict form inquired as to the negligence percentage of the plaintiff before inquiring as to the negligence percentage of the defendant. According to the plaintiff "[s]uch form presumes negligence on the part of the plaintiff." The plaintiff cites no authority in CT Page 2748 support of this proposition which, to be generous, is counterintuitive.[8] In any event, the court's charge made it abundantly clear that this was not so.[9]
 VIII
The plaintiff claims error because "[t]he Court allowed the defendant to obtain an independent medical examination of the plaintiff after jury selection had been completed and prior to the start of evidence. The Court granted this relief despite the fact that the defendant had previously been granted a nine (9) month continuance in January, 1999 ([by] Silbert, J.) to pursue such an IME, but failed to do so within that time frame."
As discussed supra, the case originally was scheduled for trial in January, 1999. Because of the plaintiff's late claim of a traumatic brain injury, Judge Silbert continued the case for nine months. The defendant requested additional discovery of documents relating to school, employment and tax records, in order to investigate the claim of traumatic brain injury. Throughout the summer of 1999 and up to the time the case was assigned to this court for trial, the defendant complained that the plaintiff was stonewalling and not producing the needed documents. See Motion for Non-Suit, filed August 20, 1999; Reply to Plaintiff's Objection, filed August 27, 1999; Motion for Continuance, filed August 20, 1999; Motion to Preclude, filed in court September 9, 1999; Motion to Preclude and/or for Mistrial, filed in court September 16, 1999; see also Court Exhibit 10 for identification.
These motions came before this court, in one form or another, when the case was assigned to this court for trial. After unusually contentious oral argument by the parties, the following options were evident. First, the court could have granted the defendant's motions to preclude or for nonsuit or mistrial and preclude some or all of the plaintiff's case. Second, the court could have denied the defendant's motions, and prelude any meaningful contest as to the nature and extent of the plaintiff's claimed neurological injury. Third, the court could have continued the case indefinitely or for a protracted period of time. Fourth, the court could have assumed management of the outstanding discovery, despite the late hour and schedule — day-by-day — the production of documents, the IME by Sass, and a deposition of Sass by the plaintiff.
The court rejected the first two options because "`[i]t is the CT Page 2749 policy of the law to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court. Snow v. Calise, 174 Conn. 567, 574, 392 A.2d 440
(1978)." Shokite v. Perez, 19 Conn. App. 203, 207, 561 A.2d 461
(1989); see Doran v. Doran, 3 Conn. App. 277, 281, 487 A.2d 1106, cert. denied, 195 Conn. 804, 491 A.2d 1104 (1985); East Haven v.Paranto, 2 Conn. App. 449, 454, 479 A.2d 1225 (1984). The court rejected the third option because of the plaintiff's opposition to it, the age of the case and the obvious, if not often acknowledged, awkwardness of a trial judge continuing a case which has been assigned to him for trial by the presiding judge. While not a perfect solution, the fourth option promised to afford both parties their day in court and held out the possibility, expressed to me in chambers, that if Sass concurred in Gilstein's opinion, the case might settle.[10]
"The granting or denial of a discovery request rests in the sound discretion of the court." Standard Tallow Corporation v.Jowdy, 190 Conn. 48, 57, 459 A.2d 503 (1983). The court is not persuaded that discretion was abused here.
 IX
The plaintiff's next claim of error involves an evidentiary ruling made by the court. During the plaintiff's cross-examination of the defendant's expert, the defendant objected to a question. The objection included an assertion, made in the presence of the jury, that plaintiff's counsel had violated a rule of professional conduct (Rule 3.4(5)). The court sustained the objection. On the next court day, the court reversed its ruling and the objection was overruled. The court explained to the jury that it was reversing its prior ruling. The plaintiff claims that "[t]he harm had already been inflicted, however, and no curative instruction could repair such damage to plaintiff's counsel's credibility."
That, however, was not the plaintiff's position at trial. On the next court day following the sustaining of the defendant's objection, the plaintiff filed a motion asking for the court to reconsider its ruling. Immediately upon convening court that morning the court stated: "I didn't read your motion. You didn't have to file it. I thought about it over the weekend, and I'm going to permit you to ask the question." The plaintiff responded: "Very well, your Honor. We're also seeking somethingcurative in regard to what I feel can be correctly stated to be CT Page 2750 unusual. To stand up and talk about ethics is certainly outside any practice book in terms of a ground for objection. To fail to cite a section all in the presence of the jury is, we contend, very ironically unusual conduct."
However, the plaintiff never suggested what he meant by "something curative." When the jury was again returned to the courtroom, the court stated: "Last week, Friday afternoon, I — there was an objection to one of Mr. Murphy's questions based on Rule 3.4 of the Rules of Professional Conduct. Having considered that over the — and I sustained the objection. Having considered that in some detail over the weekend, I'm going to vacate my ruling and overrule the objection."
The plaintiff did not take exception to the court's comments, suggest that something else was required, or move for a mistrial. "Where counsel does not request a curative instruction or seek a mistrial, `he presumably does not view the remarks as so prejudicial that his client's right to a fair trial is seriously jeopardized.' State v. Falcone, 191 Conn. 12, 23 n. 13,463 A.2d 558 (1983)." State v. Lubesky, 195 Conn. 475, 484,488 A.2d 1239 (1985); see State v. Henderson, 47 Conn. App. 542, 557,706 A.2d 480, cert. denied, 244 Conn. 908, 713 A.2d 829
(1998); State v. Maturo, 188 Conn. 591, 597, 452 A.2d 642
(1982); State v. Bradley, 12 Conn. App. 163, 167-68, 529 A.2d 1343, cert. denied, 205 Conn. 810, 532 A.2d 76 (1987). Moreover, the plaintiff has cited no case, in any jurisdiction, in which the sustaining of any objection has been held to warrant a mistrial or setting aside of a verdict where the same court later vacated the ruling.
To the extent that this claim is adequately preserved at all; see State v. Robinson, 14 Conn. App. 146, 147-49, 539 A.2d 1037, cert. denied, 208 Conn. 805, 545 A.2d 1101 (1988); O'Leary v.Industrial Park Corp., 14 Conn. App. 425, 439, 542 A.2d 333
(1988), aff'd, 211 Conn. 648, 560 A.2d 968 (1989); it clearly does not warrant the extreme action of setting aside the jury's verdict.
 X
The plaintiff seeks to set aside the verdict because of the court's "refusing on multiple occasions to grant plaintiff's counsel's request to be heard on evidentiary rulings." This claim CT Page 2751 is without merit. Practice Book § 5-5 provides that when an objection to evidence is made, "[a]rgument upon such objection . . . shall not be made by either party unless the judicial authority requests it." Therefore whether a party will be afforded or argument in connection with an evidentiary objection is discretionary with the court. The plaintiff has not identified any circumstances in which the court abused its discretion.
The plaintiff's final claim is that the court "refus[ed] on multiple occasions to require defense counsel to state the grounds for his objections, despite plaintiff's counsel's repeated requests for same." Concededly, the court did not consistently insist that the parties state the grounds for their evidentiary objections, even though this was one of the "ground rules" of which the court apprised counsel when they first arrived in the courtroom for trial.
Practice Book § 5-5, cited supra, also provides: "Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he or she desires it to go upon the record, before any discussion or argument is had." The purpose of the rule is to assist the trial court in ruling on the objection, to form a satisfactory basis for a reviewable ruling; Snow v. Howard Motors, Inc., 3 Conn. Cir. 702, 706, 223 A.2d 409, cert. dismissed, 154 Conn. 721,223 A.2d 46 (1966); and, in some instances, to alert opposing counsel so that he may correct a defect in the form of the question. However, the plaintiff has not articulated how he was substantially prejudiced by any such defalcation of the court. In the absence of such a showing, the verdict should not be upset.Rivera v. St. Francis Hospital Medical Center,55 Conn. App. 460, 468, 738 A.2d 1151 (1999).
 XI
Pursuant to General Statutes § 52-225a and Practice Book § 16-36, the defendant has moved to reduce the verdict by the amount of certain collateral source benefits, arguing that this is necessary "to prevent a double recovery by the plaintiff. . . ."
The day before the jury rendered its verdict, the Appellate Court released its opinion in Mack v. LaValley, 55 Conn. App. 150, CT Page 2752738 A.2d 718, cert. denied, 251 Conn. 928, ___ A.2d ___ (1999). In light of the holding in that case, the court requested the parties to submit briefs on the defendant's motion to reduce the verdict. It its brief, the defendant conceded that it "can only obtain a collateral source credit for those portion of the bills paid by insurance which exceed $3,626.75." In his brief, the plaintiff represented that the maximum amount of collateral source benefits he could have received totaled $2,694.15. The court then inquired of the defendant as to whether it desired an evidentiary hearing on its motion. By letter dated February 1, 2000, the defendant informed the court that it did not. In the absence of any other evidence, the court denies the motion.
 XII
This was not an easy trial. Distrust between counsel permeated the proceedings, claims of concealed documents repeatedly surfaced, and even the failure of defense counsel to greet plaintiff's counsel was raised as an issue.[11] Amidst this unnecessarily contentious and belligerent atmosphere, the plaintiff received a fair if imperfect trial. "Parties to a suit are entitled to a fair trial, not a perfect trial." Shaywitz v.Singing Oaks Day Camp, Inc., 8 Conn. App. 71, 76, 510 A.2d 1013
(1986); accord, State v. Rhodes, 248 Conn. 39, 47, 726 A.2d 513
(1999)
The plaintiff's motion to set aside the verdict is denied.
BY THE COURT
BRUCE L. LEVINJudge of the Superior Court